IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY.

## FEBRUARY TERM, 1889.

---

## AMELIA ANDERS v. SUPREME LODGE, KNIGHTS OF HONOR.

When, in an application for insurance, the applicant, after answering numerous questions, used these words: "I certify that the answers made by me, &c., are true, in which there are no misrepresentations or suppression of known facts," admitting that such statements are a warranty—*Held*, that the language being ambiguous, it was to be taken most strongly against the insurer, and that the insured warranted the statements to be true only to the best of his knowledge.

---

Motion for new trial. Suit upon a life policy of insurance.

The policy was stated to be " upon condition that the statements made by said member (the insured) in his petition for membership, and the statements made by him to the medical examiner, be made a part of this contract."

One of the clauses of the statement subscribed to the answers of the applicant for insurance was in these words, viz.: " I certify that the answers made by me to the questions pro-

175

pounded by the medical examiner of Gœthe Lodge, &c., which are attached to this application and form a part hereof, are true, in which there are no misrepresentation or suppression of known facts; and I acknowledge and agree that the above statement shall form the basis of the agreement with the Supreme Lodge, Knights of Honor, and constitute a warranty. * * * The above questions are answered to my best knowledge and belief, and I agree that should Gœthe Lodge, &c., convict me of having willfully made a misstatement, such misstatement shall be deemed evidence of fraud on my part, and shall, from date of such conviction, sever my connection with the order, and render all obligations of the Supreme Lodge to me null and void."

The policy in suit was made by the Supreme Lodge.

The defence was that one of the statements of the applicant for the insurance to the medical examiner was not true.

Argued at November Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and GARRISON.

For the plaintiff, *Abner Kalisch.*

For the defendant, *J. Frank Fort.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The first question which has been certified to this court for its advisory opinion is, whether the trial judge gave the proper construction and effect to the clause in the application made by Gottlieb Anders, the husband of the plaintiff, to the defendant for membership.

The clause in the application thus referred to is in the words following, viz.: "I certify that the answers made by me to the questions propounded by the medical examiner of Gœthe Lodge, No. 1828, which are attached to this application and form a part hereof, are true, in which there are no misrepresentation or suppression of known facts; and I acknowledge and agree that the above statement shall form the basis of the

agreement with the Supreme Lodge, Knights of Honor, and constitute a warranty."

At the trial it was proved that one of the statements attached to the application was not true, and Mr. Justice Depue, who presided at the Circuit, instructed the jury that such fact did not, *proprio vigore,* avoid the policy, but that to produce that result it must have been false to the knowledge of the applicant.

This is the proposition the correctness of which is now challenged.

But this court is of opinion that the construction adopted is the proper one. In the interpretation of warranties of this class, the judicial leaning is invariably against a literal rendering of the stipulation, and in favor of construing the clause according to its spirit and purpose. It is to be presumed that the parties dealt with each other, in this particular, in good faith, intending to lay a reasonable basis for the promise to insure, and, consequently, it requires plain and unambiguous terms to induce the court to conclude that it was the conventional purpose that the policy should be a nullity in case the assured had, in his application, unintentionally misstated a fact. Indeed, the conditions of the present case appear to repudiate the hypothesis that it was the intention of these contractors to make the life of the policy dependent upon the absolute and exact verity of the truth of each of the statements in question. For example, the assured, when asked at what age his father died, answered, at the age of seventy-five years. Now, on the theory that absolute truth is required, if it should be shown that the parent died a day or an hour before or after he had reached such designated age, the contract of insurance would be entirely void; and assuredly, it is scarcely conceivable that such an agreement was either consciously offered on the one side or consciously accepted on the other. There is nothing in the law that forbids persons from entering into such preposterous agreements if they see fit so to do; but fortunately the principles of juris-

prudence forbid the court from constructing them out of uncertain phraseology.

And this we would do in the present instance by adopting the thesis of the defence, for the language of the stipulation in question is plainly ambiguous. The words are: " I certify that the answers made by me, &c., are true, in which there are no misrepresentation or suppression of known facts." Upon the interpretation as contended for by the defence, that the allegation that the answers are true means that they are absolutely true, it is obvious that the subjoined certification, that in such absolutely true answers there are no misrepresentations, becomes entirely nugatory. To give a consistent effect to both branches of the clause, it is necessary to read it in the sense that the answers are true to the extent of not being consciously false.

This is the way in which a similar stipulation was treated in the Queen's Bench, in the case of *Fowkes* v. *Assurance Association*, 3 *Best & S.* 917. There the policy provided, " that if any statement, &c., was untrue, or if the policy made should have been effected by or through any willful misrepresentation, concealment or false averment whatsoever, * * * the policy should be void." The declaration which formed the basis of the contract contained the following stipulation, viz.: " I do hereby declare that the above particulars are correct and true throughout. * * * And if it shall hereafter appear that any fraudulent concealment or designedly untrue statement be contained therein," the policy " shall be absolutely null and void."

It will be observed, that in the reported case the stipulation, if separated from its context, was to the effect that the policy was to be void if any of the statements on which it rested were untrue, but the court declared that the meaning of this particular stipulation was to be gathered, not from the particular terms in which it was couched, but from such terms in their connection with the rest of the expressions of the contract, and that, on the whole, the contract thus constructed

rendered it clear that an untrue statement that would avoid the policy, meant one designedly untrue.

And it should be also observed that in the case now in hand there is a further clause in the applicant's certificate that has an important bearing on the question above discussed. In a separate clause, next but one below that containing the declaration that the answers are true, is a sentence in these words, viz.: "The above questions are answered to my best knowledge and belief, and I agree that should Gœthe Lodge, &c., convict me of having willfully made any misstatement, such misstatement shall be deemed evidence of fraud on my part, and shall, from the date of such conviction, sever my connection with the order, and render all obligations of the Supreme Lodge to me null and void."

It seems to the court that this explicit declaration by the assured that he has answered the questions to the best of his knowledge and belief, must be held to exclude the idea that he has undertaken to answer them in a more unqualified manner. If his first statement was an engagement that his answers were absolutely true, no reason appears for the presence of this subsequent statement that such answers were but relatively true.

In fine, the several parts of this contract will not consist unless upon the theory that the assured warranted, not the absolute truth of his answers, but only their truth to the extent of his knowledge.

With respect to the finding of the jury on the question submitted to them, whether the defendant knowingly made the answer which in actual fact was untrue, it is enough to say, that the subject has been carefully examined by the court, and with the result that if the verdict be wrong, it is not so clearly wrong that it can be set aside.

Let the rule be discharged.