ÆTNA LIFE INSURANCE COMPANY V. JENNIE M. REH-
LAENDER.

FILED MARCH 18, 1903. No. 12,691.

1. **Revival of Policy**: STATEMENT BY THE ASSURED: NOT A WARRANTY.
   A statement, signed at the request of the agent of a life-insurance
   company by the assured, to obtain a revival of his policy, where,
   by its terms, it should have been signed by the beneficiary, and
   in which the assured states that he is in good health and that
   there is nothing in his habits or condition which is likely to
   impair his health or shorten his life, is a representation and not
   a warranty.

2. **Defense**: FALSE REPRESENTATIONS: PROOF. In order to defeat a re-
   covery in such a case the company must prove that the represen-
   tations are untrue, and were made by the assured knowingly with
   the fraudulent intent to mislead and deceive; that they were
   material to the risk, and were relied on by the defendant.

3. **Verdict**: THEORY OF THE CASE. Where the insurance company treats
   the statement as a representation, pleads its falsity, alleges that
   the false statement was knowingly and intentionally made in
   order to deceive, and cause it to revive the policy, which it other-
   wise would not have done, and the cause is tried and the jury
   properly instructed on that issue, a verdict against the company
   will not be set aside if there is competent evidence to sustain it.

4. **Instructions.** Instructions tendered by the defendant examined,
   and *held* to have been properly refused.

5. **Case Distinguished.** The case of *Royal Neighbors of America
   v. Wallace*, 66 Neb. 543, examined and distinguished.

ERROR to the district court for Lancaster county: ED-
WARD P. HOLMES, DISTRICT JUDGE. *Affirmed.*

*Arthur W. Lane* and *F. M. Tyrrell*, for plaintiff in error.

*Charles O. Whedon*, contra.

BARNES, C.

This action was commenced in the district court for
Lancaster county by Jennie M. Rehlaender to recover the
sum of $1,000 and interest thereon from the 29th day of
March, 1901, alleged to be due her from the Ætna Life
Insurance Company, on a policy of insurance on the life

of her deceased husband, Rudolph L. Rehlaender. The petition was in the usual form in such cases. It set out the policy and all of its conditions, with sufficient other averments to constitute a cause of action thereon. The defendant company filed its answer, in which the following allegations appear:

Further answering, the defendant alleges that the policy of insurance set forth in the plaintiff's petition, being No. 283,484, upon the life of one Rudolph L. Rehlaender, was issued on or about the 21st day of February, 1900, and was issued and delivered subject to all the conditions therein expressed, and subject especially to the following conditions, which were attached to and made a part of said policy of insurance:

In consideration of the advanced payment of $4.96, under policy No. 283,484, on the life of Rudolph L. Rehlaender, temporary insurance subject to the conditions of said policy, shall commence when the same is delivered, and shall cover the term intervening between said delivery and 5 o'clock P. M. of the date of said policy, when if the regular premium required by said policy is not paid, the insurance will cease.

That the first or regular premium provided by said policy to be paid upon the 15th day of August, 1900, the date of said policy, was not paid, whereby said policy lapsed and became void, and the insurance thereunder ceased and determined.

That thereafter, on or about the 25th day of September, 1900, for the purpose of obtaining a revival of said policy, the said Rudolph L. Rehlaender executed the following warranty in writing and delivered the same to the defendant:

"Lincoln, Neb., Sept. 25th, 1900.

"For the purpose of obtaining the revival of policy No. 283,484, issued by the Ætna Life Insurance Co., on the life of Rudolph L. Rehlaender, which policy lapsed because of the nonpayment of the premium due on the 15th

day of August, 1900, I hereby certify that said Rudolph L. Rehlaender is now in good health, and that there is nothing in his habits or condition which is likely to impair his health or shorten his life, and if this representation shall prove in any respect untrue, said policy shall cease and be treated in the same manner as if it had not been revived. I also agree that by accepting this premium now, the said company incurs no obligation to accept any future premium after it becomes due.

"(Signed)          RUDOLPH L. REHLAENDER.
"Witness: Z. DWIGGINS."

That said Rudolph L. Rehlaender was not at the time of the signing and delivery of said warranty, and the payment of the said premium, in good health; but was then and there suffering from a dangerous and fatal disease and malady from which he afterwards died, which fact was well known to said Rudolph L. Rehlaender at and prior to the time of making said representations and warranty; and that same were made for the purpose and with the intent to mislead and deceive this defendant; and that said fact was not known to the defendant then and thereafter until on or about the —— day of April, 1901, and after the death of said Rudolph L. Rehlaender; that by reason of said false and fraudulent representation and warranty the defendant was misled and deceived, and induced to consent to a revival of said policy, to which it would not have consented except for said false and fraudulent representations and warranty; that by reason thereof said policy was, and continued to be, void; and was never revived, and was of no effect and no obligation exists or has existed thereby or thereunder since the death of the said Rudolph L. Rehlaender, on the part of this defendant.

This defense having been thus tendered by the pleading, the plaintiff joined issue by a reply, which denied each and every allegation contained in the answer. The cause was tried on these issues to a jury, and a verdict was returned

in favor of the plaintiff and against the defendant for the full amount of the policy and interest. The company filed its motion for a new trial, which was overruled. Judgment was rendered against it on the verdict, and it thereupon prosecuted error to this court.

It appears that on the 21st day of February, 1900, the deceased, Rudolph L. Rehlaender, applied for, and, in the regular way, upon a proper and suitable medical examination, obtained a policy of insurance in the defendant company for the sum of $1,000, payable to his wife, Jennie M. Rehlaender, in case of his death; that arrangements were made by which the policy was really to be issued on the 15th day of August, 1900, but temporary insurance was secured by payment of a part of the premium, which was to be credited at the time the first semiannual payment should be made. It was provided that if the premium due at that time was not paid, the policy should lapse and the insurance should terminate.

It further appears that the insured neglected to pay the balance of the premium when it became due, and it may be conceded at the outset that the policy thereupon lapsed. It further appears that shortly thereafter the agent of the company, who was the general state agent, notified Rehlaender of the fact that his policy had lapsed, and solicited him to pay the premium and have it revived. Rehlaender assented to this arrangement, and at the request of the agent signed the paper dated September 25, 1900, which is set forth in the petition, and in which he stated that he was in good health, and that there was nothing in his habits or condition which was likely to impair his health or shorten his life. The beneficiary, Mrs. Rehlaender, thereupon paid the premium, which was accepted, and the policy was thus revived.

It further appears that on the 15th day of February following, she paid the second premium due at that time, amounting to $37.30. It is claimed that at the time of this payment the agent who received it was notified of the fact of the serious illness of the assured, and that he

took the money with full knowledge of his condition. This fact is disputed, and there is a conflict of evidence in the record on this point. It further appears that about the 17th or 18th of September, Rehlaender consulted Dr. Reynolds, of the city of Lincoln, in regard to his health, stating to him that he was not feeling very well; that something was the matter with his stomach. The doctor at that time said to him, "You are a druggist," and suggested some remedies which were good for stomach trouble.

It also appears in evidence, without dispute, that a few days thereafter assured again saw the doctor, and said to him that he thought his suggestions had hit the nail on the head, as he was feeling all right. About this time, or shortly afterwards, Rehlaender signed the statement or representation pleaded and relied on as a defense herein; and Mrs. Rehlaender paid the premium and procured the revival of the insurance policy, as above stated. At that time, assured, who was foreman and stock-clerk of the Lincoln Drug Company, was attending to the duties incident to his employment, and continued to do so, and held his position and performed all the duties required of him up to the afternoon of the 9th of October following. It further appears that sometime after the 25th of September, the date of the revival of the insurance policy, Doctor Reynolds informed Mrs. Rehlaender that her husband was seriously ill, and that it would be necessary for him to be examined in order to ascertain the nature and extent of his disease. Mrs. Rehlaender informed her husband of this fact. An examination was made, and in order to ascertain what was the matter with him, the physicians conducting such examination resorted to the use of what is known as the X-ray process. Not being able to thus determine what was the matter with him, they informed him that it would be necessary to perform an operation, or, in other words, make what is known as an exploratory incision into the abdominal cavity, in order to be sure of the nature and extent of his disease. Rehlaender assented thereto, and on the 9th day of October, after performing his day's

labor, walked over to the hospital and submitted himself to the operation. It was then ascertained that he was suffering from a growth of a malignant nature, that could not be removed without causing death. In fact, he never recovered from the operation, but continued under the doctor's care until he died, sometime in the following March. So it may be fairly stated that at the time assured signed the statement or representation on which, together with the payment of the premium, the policy was revived, he was, as a matter of fact, afflicted with an incurable disease, and the representations made therein were not strictly and absolutely true.

It is now contended by the defendant company that the paper thus signed was a warranty, and the fact that it was not strictly true rendered the policy void, and that in fact there was never any revival of it, while it is contended on the part of Mrs. Rehlaender that the statement was nothing more than a representation, and that it having been made in good faith, under the belief that it was true, it, together with the payment of the premium, operated as a revival of the policy, and that she is entitled to recover.

From an examination of the answer of the defendant company, but one conclusion can be reached, and that is that the company itself has treated this statement as a representation, and not as a warranty. If it was a warranty the question of knowledge, good faith or intent would not arise, because in that event, if the statement was untrue in any material particular, a revival of the policy never took place. But it must be observed that the company has alleged that the representation was untrue; that assured was not at the time of the signing and delivery of the statement in good health, but that he was then and there suffering from a dangerous and fatal disease and malady, from which he afterwards died. It was further alleged that this fact was well known to him at and prior to the time of making the said representation and warranty, and that the same was made for the purpose and with the intent to mislead and deceive the defendant, and

23

said fact was not known to the defendant then and thereafter until the —— day of April, 1901, and after the death of the said Rehlaender; that by reason of said false and fraudulent representation and warranty the defendant was misled and deceived, and induced to consent to a revival of said policy, to which it would not have assented except for said false and fraudulent representation and warranty. This was denied by the reply, and this was the issue that was made by the defendant itself, and which was tried and submitted to the jury. The trial court treated the statement as a representation, and instructed the jury on that theory, in strict accordance with the issues made by the pleadings and the evidence introduced on the trial. If the trial court was right in this matter the judgment must be affirmed.

In the case of *Kettenbach v. Omaha Life Ass'n*, 49 Neb. 842, it was held that statements contained in an application for a policy of insurance will not be construed as warranties unless the provisions of the application and policy, taken together, leave no room for any other construction. In construing a contract for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations, the court will take into consideration the situation of the parties, the subject-matter of the contract, and the language employed, and will consider a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements. In that case suit was brought on a life insurance policy which was issued on an application, which contained, among other things, the following:

"That I am now in good health, and do ordinarily enjoy good health, and that in the above application I have not withheld any circumstances or information touching the past or present state of my health or habits of life with which the Pythian Life Ass'n ought to be made acquainted.

\* \* \* And I do hereby declare and agree that each and every statement and answer contained in this application is material to the risk, and I hereby warrant all the answers and statements, and each and every one of them contained herein \* \* \* to be full, complete, and true. And it is agreed that this warranty shall form the basis and shall be a part of the contract between me and said association. \* \* \* I do hereby further agree that if any of the answers or statements made and contained herein are not full and complete, or that if the same, or any of them, whether made in good faith or otherwise, are in any respect untrue, then said policy and this contract shall be null and void."

It was held that these answers and statements were representations, and not warranties, and that although it might be conceded that they were not absolutely true in point of fact, yet, in order to defeat an action on the policy, it was necessary for the company to plead and prove that the statements and answers were made as written in the application, that they were false in some particular material to the insurance risk, that they were made intentionally by the assured, and that the insurance company relied and acted upon such statements.

In the case of *Ætna Ins. Co. v. Simmons,* 49 Neb. 811, it was held that a warranty in insurance law is the assertion by the assured of some fact, on the literal truth of which the validity of the policy depends, without regard to the materiality of such fact or the motive which prompted the assertion; that a representation, in insurance law, is also the assertion by the insured of some fact, but the validity of the policy does not depend upon the literal truth of the assertion; that, if a doubt exists as to whether a statement made is a warranty or a representation, it will be held a representation; and that warranties are not to be created or extended by construction.

Statements like those made by the assured in this case have been held to be representations in *Campbell v. New England Mutual Life Ins. Co.,* 98 Mass. 381; *Daniels v.*

*Hudson River Fire Ins. Co.*, 12 Cush. (Mass.) 416, 59 Am. Dec. 192; *Supreme Lodge of Knights of Pythias of the World v. Edwards*, 15 Ind. App. 524, 41 N. E. 850; *Northwestern Mutual Life Ins. Co. v. Woods*, 54 Kan. 663, 39 Pac. 189; *Miller v. Mutual Benefit Life Ins. Co.*, 31 Ia. 216, 7 Am. Rep. 122; *Anders v. Supreme Lodge, Knights of Honor*, 51 N. J. L. 175, 17 Atl. 119; *Northwestern Benevolent and Mutual Aid Ass'n v. Cain*, 21 Ill. App. 471; *Price v. Phœnix Mutual Life Ins. Co.*, 17 Minn. 473, 10 Am. Rep. 166; *Moulor v. American Life Ins. Co.*, 111 U. S. 335, 4 Sup. Ct. Rep. 466, 28 L. ed. 447; *Fitch v. American Popular Life Ins. Co.*, 59 N. Y. 557, 17 Am. Rep. 372; *Modern Woodmen Accident Ass'n v. Shryock*, 54 Neb. 250, 257, 39 L. R. A. 826; *Phœnix Life Ins. Co. v. Raddin*, 120 U. S. 183, 30 L. ed. 644.

It is thus well settled, not only in this state, but in many others, that the statement in question herein was properly held by the trial court to be a representation, and not a warranty. Again, it is difficult to see how the court could have treated it in any other manner, under the issue tendered by the company itself. Upon this issue there was an abundance of evidence to sustain the verdict of the jury. It is true that Dr. Reynolds testified that at some time, which he was not quite sure about, before the 25th of September, he told assured that he was dangerously ill. Opposed to his testimony is that of Mrs. Rehlaender, in which she states that the doctor told her after the 25th of September that her husband was seriously ill, and that he had not said anything to him about it; that he deemed it best to consult and advise with her before he made the matter known to her husband. Even Dr. Reynolds refused to testify that on the 25th of September there was anything in Rehlaender's condition that would likely impair his health or threaten his life. When asked that direct question his answer was: "That is too much of a question." He would only state that on the 25th of September assured was not, in his judgment, in good health. Doctor Giffin, who was called by the company as one of its witnesses, testified as follows:

Q. From your examination at that time, October 9, 1900, and from the nature of the disease you found him suffering from, I will ask you whether, in your judgment, there was anything in his condition fourteen days prior to that, that was likely to impair his health or threaten his life?

A. I could not make a prognosis on that, and I never saw him previously until that morning.

Q. Without having seen him prior to the time you would not be able to testify?

A. No, sir, I could not tell.

Q. When were you first asked to assist in the operation?

A. The morning of the operation.

Q. When were you first consulted?

A. That morning, I think.

Q. I will ask you from your examination of Mr. Rehlaender at that time whether in your judgment there was anything there which would inform him on the 25th of September previous that he was suffering from any disease which would likely shorten his life, or if he could know of that fact?

A. No, he could not know of it.

He was then asked by the attorney of the company this question:

Q. Would you say there was anything in his condition that would inform him that he was not in good health?

A. A man could have that and not know it. That is a hard question to answer until it reached to the point where it commenced to press upon the nerves of the aorta.

Q. The question is whether he did know that or not?

A. He could not know it; no, sir.

It will thus be seen that the jury could well determine that the defendant company had failed to make out the defense pleaded in its answer, and that the evidence fully justified them in finding for the plaintiff.

It is contended by the defendant company that the court erred in refusing to give its instructions as requested. An examination of these requests discloses that they are all based on the theory that the statement signed by the as-

sured was a warranty, and the jury were thereby told that in case they should find that the statement or representation was untrue, their verdict should be for the defendant. These requests are not the law, as recognized by this court, and were not proper under the issues and the evidence produced at the trial.

It is further contended that the court erred in his instructions to the jury given on his own motion. We have examined them and find that they are based on the issues and the evidence. Counsel for the plaintiff in error cites the case of *Royal Neighbors of America v. Wallace*, 66 Neb. 543, as an authority in support of his contention. That case is readily distinguishable from the one at bar. The error there was that the court left the jury at liberty to disregard all representations as immaterial to the risk; while here they were instructed that the statements or representations were material, and if they found them to be untrue, and to have been made knowingly by the assured, with intent to deceive the company, and thus procure a revival of the policy, their verdict should be for the defendant.

It appears that the state agent of the defendant company requested the assured to sign the statement in question, although by its terms it should have been signed by the beneficiary; that he was willing to accept it in place of a doctor's certificate, which he might have required before reviving the policy; that he took the premium from the beneficiary and retained the same; that he accepted the second instalment thereof, and has never returned or offered to return these payments. The company was well aware of the infirmities naturally inherent in such a statement, and the liability of the assured to be honestly mistaken as to the state of his health and his true physical condition. It should not now be permitted to avoid its liability on the ground that the representation was untrue without showing that the assured knew of the untruthfulness of his statement, and that he made it fraudulently with the purpose and intent to deceive, and thus obtain a renewal of the policy.

It appears upon a careful examination of the whole case that it was fairly tried, and was submitted to the jury under proper instructions. We therefore recommend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

POUND, C., concurring.

I concur for the reason that the instructions complained of submitted to the jury the issue tendered by the defendant's answer. Not only has the defendant framed its answer upon the theory upon which the case was submitted to the jury, but it tried its case upon that basis. Having pleaded and introduced evidence upon one theory, it was in no position to ask the court to instruct the jury upon another, or to complain of the action of the court in adopting the theory presented by the answer and the evidence.