JOSEPH M. DONAHUE, Administrator of the Estate of Mary E. Donahue, Deceased, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

(L.R.A.1918A, 300, 164 N. W. 50.)

Insurance — life — contract for — stipulations of receipt for premium — effect of — conclusive evidence — of the fact — policy binding — upon delivery.

1. Section 6515 of the Compiled Laws of 1913 provides as follows: "An ac-

---

Note.—On effect of stipulation in application or policy of life insurance that it shall not become binding unless deliver..l to assured while in good health, see notes in 17 L.R.A.(N.S.) 1144; 43 L.R.A.(N.S.) 725; and L.R.A.1916F, 171.

As to effect of honest mistake in answers as to health of insured, warranted by him to be true, see notes in 53 L.R.A. 193, and 15 L.R.A.(N.S.) 1277, from which it appears that, if the premium in fact is not paid, the acknowledgment of payment in the policy, so far as it is a receipt for money, is only prima facie, and the amount can be recovered, but, so far as the acknowledgment is contractual, it cannot be contradicted so as to invalidate the contract.

knowledgment in a policy of the receipt of premium is conclusive evidence of its payment so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid." The policy contract of insurance under consideration contains an acknowledgment of receipt of premium as of date April 30th, 1913. *Held* that the policy having, after the date thereof, been delivered, became effective and binding so, far as the payment of premium is concerned, on and after the 30th day of April,, 1913, notwithstanding the actual payment of premium was at a later date.

**Insurance policy — contract — application — policy issued — delivered — status of insured at time of application — based on — insurance company — — risk assumed by.**

2. Where insurance is applied for and afterwards the policy is issued and. delivered, it is based upon the status of the insured at the time of the application, and the company assumes the risk after the date of the policy. The receipt for the premium in the policy itself and the subsequent delivery of the policy makes the policy an effective and binding obligation from its date.

**Insurance — application for — contract — misrepresentations — oral — written — made by insured — material — intent to deceive — risk increased.**

3. No oral or written misrepresentations made in the negotiations of a contract or policy of insurance by the insured or in his behalf shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless such misrepresentations are made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss. Such is the language in § 6501 of the Compiled Laws of 1913.

**Life insurance — contract for — construction of — application — answers in — given reasonable interpretation.**

4. A contract of life insurance must receive a reasonable interpretation, and this is true of the answers of the applicant in his application for insurance. His answers must not be so construed as to compel him to be his own insurer.

Opinion filed July 9, 1917.

Appeal from the District Court of Williams County, *Frank E. Fisk,* Judge.

Affirmed.

---

On when may statement be regarded as representations, although expressly denominated in the policy as warranties, see note in 11 L.R.A.(N.S.) 981.

On duty to notify insurer of facts which develop after submission of application, but before delivery of policy or certificate, see notes in 8 L.R.A.(N.S.) 983; and 39 L.R.A.(N.S.) 951.

On recital of payment of premium in policy of insurance, see note in 70 Am. St. Rep. 597.

On stipulation in life insurance policy as to payment of premium, see note in 60 Am. Rep. 708.

*Lawrence & Murphy* and *Frederick L. Allen,* for appellant.

A preponderance of the evidence means that which satisfies the conscience and carries conviction to an intelligent mind. Foulke v. Tahlmessinger, 8 Misc. 445, 28 N. Y. Supp. 684; North Chicago Street R. Co. v. Fitzgibbons, 180 Ill. 466, 54 N. E. 483.

Courts are not bound by the testimony of interested parties, but may look beyond it to the surrounding facts and circumstances to ascertain the true character of the transaction. Dows v. Glaspel, 4 N. D. 251, 60 N. W. 60.

Where a number of witnesses testify positively to seeing a person intoxicated frequently, their testimony will not be rejected because a like number testify that they never saw such person intoxicated. In the one case it is positive, and in the other negative, evidence. Brockway v. Mutual Ben. L. Ins. Co. 9 Fed. 249; Richards v. Richards, 19 Ill. App. 465; Walton v. Walton, 34 Kan. 195, 8 Pac. 110; Dunlap v. Snyder, 17 Barb. 561; Boylan v. Meeker, 28 N. J. L. 274.

Ordinarily a witness who testifies affirmatively to a given fact is to be preferred to one who testifies in a negative manner. 2 Moore, Facts, §§ 1192, 1193; Wickham v. Chicago & N. W. R. Co. 95 Wis. 25, 69 N. W. 982, 1 Am. Neg. Rep. 198; Ryan v. La Cross City R. Co. 108 Wis. 122, 83 N. W. 710; Patterson v. Gaines, 6 How. 550, 12 L. ed. 553.

The contract for insurance was executory, and the liability of the insured depended upon the actual, and not the mere apparent, good health of the insured when the first premium was paid. Thompson v. Travelers' Ins. Co. 11 N. D. 274, 91 N. W. 75, 13 N. D. 444, 101 N. W. 900; Metropolitan L. Ins. Co. v. Howle, 62 Ohio St. 204, 56 N. E. 908; Plumb v. Penn Mut. L. Ins. Co. 108 Mich. 94, 65 N. W. 611; Powers v. North Eastern Mut. L. Asso. 50 Vt. 630.

In an application for insurance it is wholly immaterial whether the applicant knew of the existence of the disease, because he agreed that it did not exist. Tobin v. Modern Woodmen, 126 Mich. 161, 85 N. W. 47; Baumgart v. Modern Woodmen, 85 Wis. 546, 55 N. W. 713; Boyle v. North Western Mut. Relief Asso. 95 Wis. 312, 70 N. W. 351; Connecticut Mut. L. Ins. Co. v. Pyle, 44 Ohio St. 19, 58 Am. Rep. 781, 4 N. E. 465; Volker v. Metropolitan L. Ins. Co. 1 Misc. 374, 21 N. Y. Supp. 456; Miles v. Connecticut Mut. L. Ins. Co. 3 Gray,

580; Ætna L. Ins. Co. v. France, 91 U. S. 510, 23 L. ed. 401; Jeffries v. Economical Mut. Ins. Co. 22 Wall. 47, 22 L. ed. 833; Fidelity Mut. Life Asso. v. Jeffords, 53 L.R.A. 193, 46 C. C. A. 377, 107 Fed. 402; Barker v. Metropolitan L. Ins. Co. 188 Mass. 542, 74 N. E. 945; Gallant v. Metropolitan L. Ins. Co. 167 Mass. 79, 44 N. E. 1073; Woodmen of World v. Locklin, 28 Tex. Civ. App. 486, 67 S. W. 331; Metropolitan L. Ins. Co. v. Willis, 37 Ind. App. 48, 76 N. E. 560; Brooks v. Munice & P. Traction Co. 176 Ind. 298, 95 N. E. 1006; 25 Cyc. 719, 725, notes 26, 62; Metropolitan L. Ins. Co. v. Howle, 62 Ohio St. 204, 56 N. E. 908, 68 Ohio St. 614, 68 N. E. 4; Packard v. Metropolitan L. Ins. Co. 72 N. H. 1, 54 Atl. 287; Roe v. National L. Ins. Co. 137 Iowa, 696, 17 L.R.A.(N.S.) 1148, 115 N. W. 500; Cable v. United States L. Ins. Co. 49 C. C. A. 216, 111 Fed. 19; Reese v. Fidelity Mut. Life Asso. 111 Ga. 482, 36 S. E. 637.

A charge to the effect that no recovery can be had if, on the date of the policy, or when it was delivered, assured was not in good sound health, states the law. Metropolitan L. Ins. Co. v. Howle, 68 Ohio St. 614, 68 N. E. 4; Roe v. National L. Ins. Asso. 137 Iowa, 696, 17 L.R.A.(N.S.) 1151, 115 N. W. 500; Packard v. Metropolitan L. Ins. Co. 72 N. H. 1, 54 Atl. 287; Cable v. United States L. Ins. Co. 49 C. C. A. 216, 111 Fed. 19; Powell v. Prudential Ins. Co. 153 Ala. 611, 45 So. 208; Thompson v. Metropolitan L. Ins. Co. 99 N. Y. Supp. 1006; British Equitable Ins. Co. v. Great Western R. Co. 38 L. J. Ch. N. S. 314, 20 L. T. N. S. 422, 17 Week. Rep. 561; Reese v. Fidelity Mut. L. Asso. 111 Ga. 482, 36 S. E. 637; Maloney v. Northwestern Masonic Aid Asso. 8 App. Div. 575, 40 N. Y. Supp. 918; Thompson v. Travelers' Ins. Co. 13 N. D. 444, 101 N. W. 900; North Western L. Asso. v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695.

Stipulations in the policy to the effect that the policy shall not take effect unless delivered to the insured while he is in good health, and similar provisions, are valid. Bell v. Missouri State L. Ins. Co. 166 Mo. App. 390, 149 S. W. 33; Perry v. Security Life & Annuity Co. 150 N. C. 143, 63 S. E. 679; Murphy v. Metropolitan L. Ins. Co. 106 Minn. 112, 118 N. W. 355; Connecticut General L. Ins. Co. v. Mullen, 43 L.R.A.(N.S.) 725, 118 C. C. A. 345, 197 Fed. 299; Mohr v. Prudential Ins. Co. 32 R. I. 177, 78 Atl. 554.

An insurance company computes its liability from the statements and

showing made in the application.   Gallant v. Metropolitan L. Ins. Co. 167 Mass. 79, 44 N. E. 1073; British Equitable Ins. Co. v. Great Western R. Co. 38 L. J. Ch. N. S. 314, 20 L. T. N. S. 422, 17 Week. Rep. 561; Thompson v. Travelers' Ins. Co. 13 N. D. 444, 101 N. W. 900.

If there is any change in the condition of health of the applicant pending negotiations for insurance, such fact should be made known, and its concealment is fraud.   Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561; Cable v. United States L. Ins. Co. 49 C. C. A. 216, 111 Fed. 19; M'Lanahan v. Universal Ins. Co. 1 Pet. 170, 7 L. ed. 98; Piedmont & A. L. Ins. Co. v. Ewing, 92 U. S. 377, 23 L. ed. 610; Equitable Life Assur. Soc. v. McElroy, 28 C. C. A. 365, 49 U. S. App. 548, 83 Fed. 631; Traill v. Baring, 4 De G. J. & S. 318, 46 Eng. Reprint, 941, 33 L. J. Ch. N. S. 521, 10 Jur. N. S. 377, 4 Giff. 485, 66 Eng. Reprint, 797, 12 Week. Rep. 678, 10 L. T. N. S. 215; Watson v. Delafield, 2 Caines, 224, 1 Johns. 150, 2 Johns. 526.

*Palmer, Craven & Burns, John E. Greene* and *Chas. J. Fisk,* for respondent.

"This policy and the application herefor, a copy of which is indorsed hereon, and attached hereto, constitute the entire contract between the parties hereto."   Such is the provision of the policy in this case, and therefore the report of the medical examiner forms no part of the insurance contract.   25 Cyc. 754, and cases cited.

The above clause was put into the policy by defendant, originated with and was dictated by defendant, and should be most strongly construed against defendant.   25 Cyc. 739, 799; Harrington v. Mutual L. Ins. Co. 21 N. D. 447, 34 L.R.A.(N.S.) 373, 131 N. W. 246.

He who seeks to avoid the effect of a solemn written obligation on the ground of fraud has the burden of proof as to such issue.   Pope v. Bailey-Marsh Co. 29 N. D. 355, 151 N. W. 18, 8 N. C. C. A. 516, and cases cited; Schofield v. Metropolitan L. Ins. Co. 79 Vt. 161, 64 Atl. 1107, 8 Ann. Cas. 1152.

Good-faith statements, although warranties, will not avoid the policy. Schofield v. Metropolitan L. Ins. Co. 79 Vt. 161, 64 Atl. 1107, 8 Ann. Cas. 1152; Moulor v. American Ins. Co. 111 U. S. 335, 28 L. ed. 447, 4 Sup. Ct. Rep. 466; Globe Mut. L. Ins. Asso. v. Wagner, 188 Ill. 133, 52 L.R.A. 649, 80 Am. St. Rep. 169, 58 N. E. 970; Fidelity Mut. L. Ins. Asso. v. Jeffords, 53 L.R.A. 193, 46 C. C. A. 377, 107 Fed.

402: Rasicot v. Royal Neighbors, 18 Idaho, 85, 29 L.R.A.(N.S.) 433, 138 Am. St. Rep. 180, 108 Pac. 1048; Modern Woodmen Acci. Asso. v. Shryock, 54 Neb. 250, 39 L.R.A. 826, 74 N. W. 607; Dimick v. Metropolitan L. Ins. Co. 69 N. J. L. 384, 62 L.R.A. 774, 55 Atl. 291; Suravitz v. Prudential Ins. Co. 244 Pa. 582, L.R.A.1915A, 273, 91 Atl. 495; Ætna L. Ins. Co. v. Rehlaender, 68 Neb. 284, 94 N. W. 129, 4 Ann. Cas. 251.

A policy of insurance takes effect upon its date, if delivered. Harrington v. Mutual L. Ins. Co. 21 N. D. 447, 34 L.R.A.(N.S.) 373, 131 N. W. 246; 25 Cyc. 742; Union Ins. Co. v. American F. Ins. Co. 107 Cal. 328, 28 L.R.A. 692, 48 Am. St. Rep. 140, 40 Pac. 431; Rayburn v. Pennsylvania Casualty Co. 138 N. C. 379, 107 Am. St. Rep. 548, 50 S. E. 762; Anderson v. Mutual L. Ins. Co. 164 Cal. 712, 130 Pac. 726, Ann. Cas. 1914B, 103.

Defendant is estopped to assert that its solemn contract is void. The delivery of the policy, in the absence of fraud, is conclusive that the contract is completed. Griffith v. New York Life Ins. Co. 101 Cal. 627, 40 Am. St. Rep. 96, 36 Pac. 113; Berliner v. Travelers Ins. Co. 121 Cal. 451, 53 Pac. 922; Globe Mut. L. Ins. Asso. v. Meyer, 118 Ill. App. 155; Sheldon v. Atlantic F. & M. Ins. Co. 26 N. Y. 460, 84 Am. Dec. 213; Hartford F. Ins. Co. v. Whitman, 9 Ann. Cas. 224, note and cases cited.

Defendant claiming fraud has the burden of proving same. Sprott v. Ross, 16 Sc. Sess. Cas. 1st series, 1145; Thompson v. Travelers Ins. Co. 11 N. D. 274, 91 N. W. 75, 13 N. D. 444, 101 N. W. 900; Fidelity Mut. L. Ins. Asso. v. Jeffords, 53 L.R.A. 197, 46 C. C. A. 377, 107 Fed. 402.

"An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid." Harrington v. Mutual L. Ins. Co. 21 N. D. 447, 34 L.R.A.(N.S.) 373, 131 N. W. 246; Hartford F. Ins. Co. v. Whitman, 9 Ann. Cas. 224, note.

The certificate of death furnished by the doctor, and the statement therein as to the cause of death, are not conclusively binding. They are mere preliminary steps in proof of a fact, and when offered are hearsay and of no value as evidence. Comp. Laws 1913, § 6542;

Messersmith v. Supreme Lodge, K. of P. 31 N. D. 163, 153 N. W. 989; John Hancock Mut. L. Ins. Co. v. Dick, 44 L.R.A. 853, note.

"Pregnancy in the case of a female applicant is not a breach of warranty of sound health." Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561; 14 R. C. L. 1069, and cases cited; Rasciot v. Royal Neighbors, 18 Idaho, 85, 29 L.R.A.(N.S.) 433, 138 Am. St. Rep. 180, 108 Pac. 1048; Merriman v. Grand Lodge, D. H. A. O. U. W. 77 Neb. 544, 8 L.R.A.(N.S.) 983, 124 Am. St. Rep. 867, 110 N. W. 302, 15 Ann. Cas. 124.

GRACE, J. The action is one brought to recover upon an insurance policy upon the life of Mary E. Donahue. The complaint, after alleging that the defendant is a foreign corporation duly authorized to transact business in the state of North Dakota, further states in substance that on the 30th day of April, A. D. 1913, in consideration of the payment of the annual premium of $75.78, and of the payment of a like amount upon each 30th day of April thereafter until twenty full premiums shall have been paid, or until the death of Mary E. Donahue, said defendant made, executed, and delivered its certain policy of insurance in writing to said Mary E. Donahue on her life, a true and correct copy of which said policy is hereto attached marked "exhibit A" and made a part of this complaint; said defendants therein duly admitted the receipt of the said first annual premium, and by the terms of said policy further promised and agreed to pay, at the home office of the said company in the city of New York, upon receipt at said home office of due proof of death of said Mary E. Donahue, the sum of $2,500, less any indebtedness on said policy to said company, and any unpaid portion of the premium for the then current policy year, upon the surrender of said policy properly receipted,—to her, said Mary E. Donahue's executor, administrator, or assigns.

That on the 24th day of July, 1913, the said Mary E. Donahue died intestate in the city of Williston, Williams county, North Dakota, and was resident in said county, and leaving estate therein. On the 28th day of July, 1913, letters of administration of the estate of Mary E. Donahue, deceased, were duly issued to Joseph M. Donahue, who duly qualified as such administrator. That on or about the 10th day of

August, 1913, plaintiff furnished and delivered to said defendant at its home office, due proofs of the death of said Mary E. Donahue; and further alleges the performance of all the conditions of said policy of insurance on their part.

The amended answer interposes a general denial of the allegations in the complaint, except certain admissions. Defendant further, in its answer, by way of defense, admits the making of the application for the insurance on the 30th day of April, 1913, and further alleges that such application contained the following paragraph, alleging that the same was expressly stipulated and agreed to by the said Mary E. Donahue.

"This application is made to the Mutual Life Insurance Company of New York. All the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are true, and are offered to the company as inducement to issue the proposed policy, which shall not take effect unless and until the first premium shall have been paid during my continuance in good health; except in the case a binding receipt shall have been issued as hereinafter provided."

"The defendant, further answering plaintiff's said complaint, alleges that in consideration of the said application signed by the said Mary E. Donahue, a copy of which is hereto attached and annexed and marked "exhibit A" and hereby referred to and hereby made a part hereof, and in consideration of the terms and conditions thereof, the said defendant wrote the policy of insurance number 2,068,902, which was dated the 30th day of April, 1913, and which said policy of insurance stated that, 'in consideration of the annual premium of seventy-five and 78–100 dollars, the receipt of which is hereby acknowledged, and the payment of a like amount upon each 30th day of April hereafter until twenty full years' premiums shall have been paid or until the prior death of the insured, promises to pay at the home office of the company in the city of New York upon receipt at said home office of due proof of the death of Mary E. Donahue, of Williston, county of Williams, state of North Dakota, herein called the insured, $2,500, less any indebtedness hereon to the company and any unpaid portion of the premium for the then current policy year, upon surrender of this policy properly receipted, to her executors, administrators, or assigns.

the beneficiaries, with the right to the insured to change the beneficiary.'

"And defendant further alleges that when the said policy was written there was attached thereto and delivered therewith a copy of said application, and that said application became and was a part of said written policy.  "Defendant answering said complaint alleges that said policy was delivered to Joseph H. Donahue, the husband of the said Mary E. Donahue, and a check for the amount of the first premium was then delivered to the defendant by the said Joseph H. Donahue and signed by him, and that at the time of the delivery of said policy to said Joseph H. Donahue, and of the payment of the premium on said policy, the said Mary E. Donahue was not in good health, and said defendant did not know that said Mary E. Donahue was not in good health at said time; that said policy of insurance never took effect as a binding contract of insurance.

"That the said defendant relied upon the stipulations and terms of said application, and that said policy of insurance would not have been delivered or the first premium thereon accepted if it had been known that the said insured was not at said times in good health."

The facts in the case are substantially as follows: On the 30th day of April, 1913, the defendant made, executed, and issued its certain policy of insurance to Mary E. Donahue in consideration of the payment of the premium of $75.78, and the payment of a like amount on the 30th day of April of each year until the full premium had been paid or until the death of Mary E. Donahue.  The defendant in its policy admitted the receipt of the first annual premium provided for by the terms of the said policy.  Said policy provided by its terms that `said defendant insurance company agreed to pay on receipt of due proofs of death of Mary E. Donahue the sum of $2,500, less any indebtedness on said policy to said defendant, and any unpaid portion of the premium for the then current policy year, upon the surrender of said policy properly receipted.  Said policy of insurance was delivered to said Mary E. Donahue on the 6th day of June, 1913.  Mary E. Donahue showed no signs of ill health, and made no complaint thereof until the 7th day of June, 1913.  From April 30 to June 7, 1913, she continued to perform her regular daily duties, assisting her husband in his shop and business in the city of Williston.  That on April

30, 1913, Mary E. Donahue was in good health, and all statements made by her in her application for insurance, which was made a part of the policy, were and are true, or in good faith believed to be true and correct, by Mary E. Donahue at the time they were made. On the 7th day of June, 1913, Mary E. Donahue complained of feeling ill, and on the morning of the 8th day of June, 1913, a physician was called to attend her for the first time. On the 24th day of July, 1913, as a result of such illness Mary E. Donahue died intestate in the city of Williston, state of North Dakota, where she was then and there a resident. On the 28th day of July, 1913, letters of administration upon the estate of Mary E. Donahue were duly issued to Joseph Donahue, plaintiff herein, by the county court of Williams county. Plaintiff duly qualified and entered upon his duties as such administrator, and ever since acted as such administrator of such estate. On the 10th day of August, 1913, plaintiff furnished to the defendant due proofs of the death of Mary E. Donahue. The first premium was actually paid to the defendant on the 6th day of June, 1913, by check, which was held by the defendant until the 14th day of June, 1913, when the same was cashed.

In this action plaintiff is seeking to recover on a life insurance policy issued by the defendant to one Mary E. Donahue, covering her life, which policy contained covenants that the estate of Mary E. Donahue would be paid the sum of $2,500 upon due proof of her death being received at the home office in the city of New York. One of the principal and most important questions to be decided in this case is, When did such policy of insurance take effect? The application for such insurance is dated April 30, 1913, and the policy is of the same date. The policy was issued in the sum of $2,500, the annual premium being $75.78. A receipt for the first premium was contained in the policy itself, and such policy in its very inception uses the following language: "The Mutual Life Insurance Company of New York, in consideration of the annual premium of $75.78, the receipt of which is hereby acknowledged, and of the payment of a like amount upon each 30th day of April hereafter until twenty full years' premiums shall have been paid, or until the prior death of the insured, promises to pay at the home office of the company in the city of New York, upon receipt at said home office of due proofs of the death of Mary E. Dona-

hue of Williston, county of Williams, state of North Dakota, herein called the insured, $2,500, less any indebtedness hereon to the company, and any unpaid portion of the premium for the then current policy year, upon surrender of this policy properly receipted, to her executors, administrators, or assigns."

Section 6515 of the Compiled Laws of 1913 reads as follows: "Receipt for premium, effect of. An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment *so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid.*"

The policy under consideration contains such a receipt as is described in said § 6515. It follows, therefore, that the exact point of time when such policy went into effect and became binding as a contract is determined by the acknowledgment in the policy itself of the first premium, the policy having thereafter been delivered. Whether the premium was actually paid in money at such time is immaterial, and where it was shown to have actually been paid at a later time is immaterial so far as determining the point of time when the policy actually became effective as a contract. Keeping in mind the date of the policy, to wit, April 30, 1913, the receipt in the policy acknowledging receipt of the first premium on such day, and the statute, § 6515, which provides that such an acknowledgment of the premium in the policy is conclusive evidence of the payment of such premium so far as making the policy binding, we cannot otherwise hold than that the policy of insurance under consideration, having been after the date thereof delivered, became effective and binding upon all parties to the contract on the 30th of April, 1913. Section 6515 is plain. Its provisions and the meaning thereof cannot be misunderstood. It says in plain and unmistakable language, *"An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment so far as to make the policy binding,* notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid." Section 6515 was interpreted in the case of Harrington v. Mutual L. Ins. Co. 21 N. D. 447, 34 L.R.A.(N.S.) 373, 131 N. W. 246, wherein the court held that "the company cannot be permitted to show that *the actual date of the issuance of a policy of life insurance was of a later date than the date recited in the contract, where the policy contains an acknowledgment*

*of the receipt of the premium."* The policy under consideration was therefore binding in its entirety on the 30th day of April, 1913, having been delivered. No other conclusion could in reason be reached if we give effect to the words of the policy itself as to receiving the first premium, considering the date of the policy, and the plain and unmistakable language of § 6515.

Having disposed of this question in the manner stated, considering the state of the testimony and the record, there really remains but little to discuss. All of the testimony relating to the health and physical condition of the insured on or about the 6th, 7th, or 8th day of June, 1913, would almost appear to be irrelevant and immaterial, being so far distant and subsequent to the date when the policy actually took effect, the policy having become binding and effective as a contract of insurance between the parties on the 30th day of April, 1913. It appearing, therefore, that there is no testimony to show the insured was not in good health on the 30th day of April, 1913, and no proof of any fraud on her part in obtaining such contract of insurance, and having been delivered, the contract became at that date binding upon all parties to the contract, and the company became liable to the beneficiaries of such policy for the full amount thereof upon the death of Mary E. Donahue, her death having been from a natural cause and not by suicide, and while the policy was in full force and effect.

In order to dispose of all questions concerning the health of the insured at the time the policy was issued on April 30, 1913, we conclude that the testimony clearly shows that on the 30th day of April, 1913, the insured was not suffering from typhoid fever. There is no positive testimony anywhere that she ever actually had typhoid fever. There are opinions based either upon subjective or objective examinations, or the Wydle test, but the testimony is not of such conclusive nature as to convince one that the insured ever was afflicted with typhoid fever. But even if it be conceded for the sake of argument that she was, it was, if at all, not to exceed eight or ten days prior to the 7th day of June, or thereabouts. In other words, if she ever became infected with typhoid fever, it was many weeks—a long time in fact—after the policy became effective on the 30th day of April, 1913, and therefore has no bearing upon the determination of the liability of the defendant.

There remains one other question concerning the health of the in-sured which should be discussed. It is claimed by the defendant and testimony was offered by it through Dr. La Berge to show that at the time of the application in question, to wit, on the 30th day of April, 1913, the insured at such time was not in good health by reason of being at the date of the application and issuance of the policy in a state of pregnancy. This phase of the case leads us to a discussion of the effect of the questions and answers contained in the application. The clause most relied on by the defendant, to which particular atten-tion is drawn, is the following: "All the following statements and answers, and all those I make to the company's medical examiner in continuance of this application, are true and are offered to the company as inducement to issue the proposed policy, which shall not take effect unless and until the first premium shall have been paid, and during my continuation in good health, and unless also the policy shall have been issued during my continuance in good health." There is also another clause in the policy which may be considered in connection with the one just quoted, which is as follows: "This policy and the application herefor, copy of which is indorsed hereon, or attached thereto, constitute the entire contract between the parties hereto. *All statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties, and no such state-ments of the insured shall avoid or be used in defense to a claim under this policy,* unless contained in the written application herefor, and a copy of the application is indorsed on or attached to this policy when issued." It must be conceded that there is no fraud in this case on the part of the insured. At least there is no competent testimony adduced to at all substantiate any charge of fraud, the burden of proof being on the party alleging fraud to prove it by clear and convincing evidence. No such proof or convincing evidence is presented in this case, and in fact, none concerning the question of fraud which can really be said to be of any effect or force, and we hold that no charge of fraud has at all been proved in this case, and that the defense of fraud, if it is relied upon in this case to avoid the liability of this policy, must fail for want of competent evidence, none having been adduced at the trial. Having disposed of the question of fraud, we hold that all statements made by the insured in her application were merely representations, and

not warranties. The policy itself stipulates that all such statements shall be considered representations, and not warranties. In some forms of application for life insurance many questions are asked concerning the health of the applicant, and applicants are required to answer categorically numerous questions as to whether or not they are suffering, or ever have suffered, from any of a long list of diseases, and if they have consulted a physician within a certain number of years regarding any such diseases. The answers to such questions are, by the language of the application in the case at bar, made representations, and not warranties; but in some forms of applications it is expressly provided that such statements shall be considered as warranties. In cases arising under the latter forms, it has been held in a number of jurisdictions that, where immaterial statements concerning immaterial matters are warranted to be true, and they are later found to be false, they will void the contract by reason of their being warranties, even though the risk is not increased by reason of such false statements. Such a construction follows and enforces literally the letter of the contract of the parties, rather than its spirit or its general intent. Such a rule is one which, on account of its rigor and its tendency to defeat the general intention of the contracting parties, should not, in our judgment, be followed in any case farther than is necessary in order to avoid doing violence to the expressed intention of the parties. In this state the legislature has seen fit to lay down a rule which wisely modifies the extreme rule referred to. Section 6501 of the Compiled Laws of 1913 provides that "no oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss." The foregoing statute, as construed by this court in the case of Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W. 760, brings within its scope statements in insurance applications which are expressly agreed to be warranties, so that in this jurisdiction even false warranties will not avoid the policy of insurance where it appears that the matters warranted were warranted without actual intent to deceive or were such as not to increase the risk of loss. In the case at bar, there being no evidence of bad faith or of an intent

to deceive, and it having been expressly agreed that the statements made by the insured are representations merely, the policy is not avoided even though the representation be not true in fact.

The human body is a complicated structure, and its many parts are most delicately adjusted and related, and it is subject to many hundreds of different ills. The ordinary person of average intelligence has but slight knowledge of their own body, and know but very little about any kind of disease that may affect the human body, and as a rule cannot tell if they are afflicted with any disease unless they are conscious of actual pain or there be some external manifestation which will excite their suspicions, and in many different kinds of diseases in their incipiency it is difficult to know of their presence. The disease may be in the body for days, sometimes weeks, even months, before a person may know its actual existence; so that a person in an insurance application, answering any question concerning any matter regarding their health or the condition of the body, merely expresses an opinion as to the matter about which he is asked, and such opinion is merely a representation that his statement is true to the best of his knowledge. On the other hand, the physician is trained and skilled in the detection and treatment of diseases; and where, as in this case, he makes the examination of an applicant for insurance, he is acting as the agent of the company, and his examination of the applicant is for the benefit and use of the company. He is afforded every opportunity to determine whether or not the applicant is in a state of good health. As such physician he uses the thermometer to determine the temperature, the stethoscope to determine the heart action, and determines the condition of the respiratory organs. He makes the blood test. He has other instruments by which he may determine arterial pressure or arterial sclerosis. He has other instruments by which he determines the range of vision, not only to test the eyesight, but possibly to discover whether or not a tumor of the brain may be making an insidious approach, and in a hundred other ways may use methods, instrumentalities, and his technical knowlege to determine whether or not diseases may be present in one's body at the time of examination. Of how much value, then, can be the statements of the persons themselves, they having little or no knowledge of disease or the functions of the body, of the heart, lungs,

etc.   They know they are living, they know they are feeling well or
unwell, but this is about the extent of their knowledge, and it is insig-
nificant as compared with the broad technical knowledge of the physi-
cian who makes the examination; and the best that can be said of it is
that it is simply and merely an expression of opinion, and whether in
the form of a warranty or not, is merely a representation and expres-
sion of an opinion,—nothing more.

If there is any testimony in this case which may be claimed to show
to some slight extent that the insured in this case, at the time of the
signing of such application for insurance and at the time that she
answered the questions in such application, was or might have been in
a delicate condition, her answer that she was not in such condition is
merely the expression of opinion, and if made in good faith, believing
that she was not in such condition, even if such answer was not true,
it would not avoid the policy or the liability of the company if the ap-
plicant in good faith believed her answer to be true.   The contract of
insurance must receive a reasonable interpretation, and this is true of
the answers of the applicant in his application for insurance.   His
answers must not be so construed as to compel him to be his own in-
surer.   The liberal rule, and we believe the sound rule, which we have
been discussing with reference to the application and the answers to
the questions therein, that all such questions and answers should when-
ever possible be considered representations, and not warranties; that
the answers are but expressions of opinion,—finds much support in a
very respectable line of authorities, among which may be mentioned
the Globe Mut. L. Ins. Asso. v. Wagner, 188 Ill. 133, 52 L.R.A. 649,
80 Am. St. Rep. 169, 58 N. E. 970; Fidelity Mut. L. Ins. Asso. v. Jef-
fords, 53 L.R.A. 193, 46 C. C. A. 377, 107 Fed. 402; Rasicot v. Royal
Neighbors, 18 Idaho, 85, 29 L.R.A.(N.S.) 433, 138 Am. St. Rep. 180,
108 Pac. 1048; Modern Woodman Acci. Asso. v. Shryock, 54 Neb. 250,
39 L.R.A. 826, 74 N. W. 607; Ætna L. Ins. Co. v. Rehlaender, 68
Neb. 284, 94 N. W. 129, 4 Ann. Cas. 251.   It has been held in the fol-
lowing cases that such statements by the assured were at best but ex-
pressions of opinion, and deemed to be representations rather than war-
ranties, and in the absence of fraud, gross negligence, or bad faith,
would not avoid the policy, though the statements were expressly de-

clared to be warranties on the part of the insured. Fisher v. Crescent Ins. Co. 33 Fed. 549; Owen v. Metropolitan L. Ins. Co. 74 N. J. L. 770, 122 Am. St. Rep. 413, 67 Atl. 25. In this case it appeared that the insured warranted that he had never had heart disease, which was in fact untrue though he had no knowledge that he did have heart disease. Ames v. Manhattan L. Ins. Co. 40 App. Div. 465, 58 N. Y. Supp. 244, affirmed in 167 N. Y. 584, 60 N. E. 1106. It appeared in this case that the insured had answered many questions concerning his physical condition which only an experienced physician could have answered correctly.

Adverting to the appellant's contention that the policy was executory, and that the liability of the insurer depended upon the actual condition, and not merely the appearance of the insured when the first premium was paid, it is held that the contract ceased to be executory on the 30th day of April, 1913, and became, upon its delivery, a binding contract upon all parties to it from April 30, 1913; and most of the testimony concerning good health being in a very remote period from April 30, 1913, it is irrelevant and immaterial, only one element of such testimony having any force or effect, and that related to the possibly delicate condition of the insured at the time of the application, which contention has been disposed of.

The case of Thompson v. Travelers' Ins. Co. 11 N. D. 274, 91 N. W. 75; second appeal in 13 N. D. 444, 101 N. W. 900, is not in point in some very material matters. In that case there apparently was no receipt in the policy itself of the first premium, which receipt under our statute, as we have seen, makes the policy upon its delivery a binding contract from its date, and makes the policy binding notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid, so that it must be considered in the case at bar that the sickness of the insured commenced more than two months after the policy became a binding obligation on all parties, and more than two months after the time when, by the receipt in the policy and the law governing the same, the premium was considered to have been paid, at least for the purpose of making the policy binding, notwithstanding that the actual payment of the premium might have been at a later date.

In the case at bar the contract of insurance consists of a policy and the application for the insurance. In the caption of the application the

statements to the medical examiner are also made a part of the application; but there is no question either in the application proper, or in that part of the application which is denominated "statements to the medical examiner," which inquires from the applicant whether or not at that time she was in a delicate condition. This constitutes the entire contract. That part printed on the back of the application which is denominated "medical examiners report" is no part of the application so far as the insured is concerned, but is simply a confidential report by the medical examiner to the company. It is a report of the medical examiner's own observations and knowledge, and is not the answers of the insured, but the answers of the medical examiner alone; and under the terms of the policy the application and policy are the whole contract, which, if true, excludes the medical examiner's report from being a part of the contract, and may be termed merely a confidential report by the medical examiner as agent to his principal, the insurance company.

The judgment appealed from is affirmed, with costs.

CHRISTIANSON, J. (concurring specially). I concur fully in an affirmance of the judgment and in the principles of law enunciated in the syllabus in this case, for the following reasons: The application for the insurance policy involved herein expressly provided that "all statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties."

The sole defense is predicated upon the proposition that the insured made a false affirmative answer to the following question: "Are you now in good health?"

It is of course elementary that a party who asserts fraud has the burden of establishing the same by clear and satisfactory proof. The defendant, therefore, had the burden of proving the false and fraudulent character of the answer of the insured to the question under consideration. It wholly failed to sustain this burden.

The evidence shows that the insured at the time of the medical examination was in the best of health. The evidence further shows that the insured had never been pregnant before. Her mother (who lived with her), and her husband, both testified that they had no hint or suspicion

that the insured was pregnant at the time she made application for insurance. No question was propounded to her in the application with respect to pregnancy, and she made no warranty or representation of any kind with respect thereto. The term "in good health" is a comparative term, and should be held to mean what is ordinarily understood by the term. When the insured was asked whether she was in good health, in the insurance application, it conveyed to her no different meaning than if the question had been submitted to her in an ordinary conversation. I do not believe that pregnancy, in case of a female applicant, is a breach of representation or warranty of good health. It is quite possible that a female applicant for insurance may be pregnant and in good health, as that term is ordinarily understood, at the same time. A wholly different situation exists where a female applicant for insurance warrants that she is not pregnant. In that case a false answer will avoid the policy. Satterlee v. Modern Brotherhood, 15 N. D. 92–98, 106 N. W. 561.

BRUCE, Ch. J. I concur in the opinion written by Mr. Justice CHRISTIANSON.