FRANK W. KETTENBACH, ADMINISTRATOR, v. OMAHA LIFE ASSOCIATION.

FILED DECEMBER 2, 1896. No. 6956.

1. **Life Insurance: TIME ACTION ON POLICY ACCRUES.** A life insurance policy provided that no action should be maintained thereon unless commenced within one year from the date of the death of the assured. The assured died on the 9th day of September. The policy also provided that the death loss should be payable within ninety days after the first periodical mortuary premium paying day next ensuing the date of acceptance by the insurance company of satisfactory evidence of the death of the assured. *Held,* (1) That a cause of action on the policy did not accrue earlier than ninety days after September 9; (2) that the time fixed by the policy in which an action thereon might be brought did not begin to run until the right of action accrued.

2. ———: WARRANTIES: CONSTRUCTION. Statements contained in an application for a policy of insurance will not be construed as warranties unless the provisions of the application and policy, taken together, leave no room for any other construction.

3. ———: ———: ———. In construing a contract, for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations, the court will take into consideration the situation of the parties, the

subject-matter of the contract, and the language employed, and will consider a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements.

4. ——: ——: ——: PLEADING AND PROOF. Certain statements and answers made by an assured in an application for a life insurance policy set out in the opinion and *held* (1) not to be warranties, but representations; (2) that in order for such representations to constitute a defense to an action on the policy it is incumbent upon the insurance company to plead and prove that the statements and answers were made as written in the application; that they were false; that they were false in some particular material to the insurance risk; that they were made intentionally by the assured; and that the insurance company relied and acted upon such statements.

5. ——: ——. *Ætna Ins. Co. v. Simmons*, 49 Neb., 811, followed.

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

*Saunders, Macfarland & Dickey,* for plaintiff in error.

*Greene & Breckenridge, contra:*

Where the statements warranted by the assured are untrue, he cannot recover. (*Ætna Life Ins. Co. v. France,* 91 U. S., 510; *Connecticut Mutual Life Ins. Co. v. Pyle,* 44 O. St., 19; *Baumgart v. Modern Woodmen of America,* 85 Wis., 546; *Cobb v. Covenant Mutual Benefit Ass'n,* 153 Mass., 176; *Fitzrandolph v. Mutual Relief Society,* 17 Can. S. C., 338; *Jeffries v. Economical Life Ins. Co.,* 22 Wall. [U. S.], 47; *Morgan v. Mutual Life Benefit Ass'n,* 32 Ill. App., 79; *Johnson v. Maine & New Brunswick Ins. Co.,* 83 Me., 183; *Alabama Gold Life Ins. Co. v. Garner,* 77 Ala., 210; *Hartwell v. Alabama Life Ins. Co.,* 33 La. Ann., 1354; *Byers v. Farmers Ins. Co.,* 35 O. St., 606; *Stensgaard v. St. Paul Real Estate Ins. Co.,* 50 Minn., 429.)

The materiality of an express warranty will not be inquired into. (*Brooks v. Standard Fire Ins. Co.,* 11 Mo. App., 349; *Lochner v. Home Mutual Ins. Co.,* 17 Mo., 255; *Mers v. Franklin Ins. Co.,* 68 Mo., 131; *Glendale Mfg. Co. v. Protection Ins. Co.,* 21 Conn., 19.)

The terms of the contract govern. (*Gilbert v. Phœnix Ins. Co.*, 36 Barb. [N. Y.], 372; *Healey v. Imperial Fire Ins. Co.*, 5 Nev., 268.)

If the agents of the company knew of the diseased condition of assured when they filled out the application and made the examination, they perpetrated a fraud upon their principal in the interest of the assured with the latter's knowledge, and the company would not be bound by the agent's acts. (*New York Life Ins. Co. v. Fletcher*, 117 U. S., 519; *Johnson v. Dakota Fire & Marine Ins. Co.*, 1 N. Dak., 167; *Centennial Mutual Life Ass'n v. Parham*, 80 Tex., 518; *Smith v. Cash Mutual Ins. Co.*, 24 Pa. St., 324.)

*Jacob Fawcett* and *B. G. Burbank*, also for defendant in error.

RAGAN, C.

This is a suit upon a life insurance policy brought in the district court of Douglas county by Frank W. Kettenbach, administrator of the estate of William F. Kettenbach, deceased, against the Omaha Life Association, the successor of the Pythian Life Association, hereinafter called the "insurance company." At the close of the evidence the insurance company moved the court for a direction to the jury to return a verdict in favor of the administrator for the sum of $90.15, the amount of the premium paid by the deceased to the insurance company for the policy in suit. This motion was sustained, a verdict returned as directed, upon which judgment was entered for the administrator, and to reverse which he prosecutes to this court a petition in error. Two arguments are relied upon here to sustain this judgment.

1. The policy in suit provided that no action should be maintained thereon unless commenced within one year from the date of the death of the assured. The assured died on the 9th day of September, 1891, and the present suit was brought on the 24th of October, 1892. The policy provided that the death loss should be payable

within ninety days after the first periodical mortuary premium paying day next ensuing the date of acceptance by the insurance company of satisfactory evidence of the death of the assured. The argument is that the action was not brought within the time prescribed by the policy. The administrator's cause of action could not possibly have accrued earlier than ninety days after September 9, 1891, the date of the death of the insured. *German Ins. Co. v. Fairbank*, 32 Neb., 750, was a suit upon a fire insurance policy which provided that no action on the policy should be maintained unless commenced within six months after the loss sued for occurred. One of the defenses interposed to the action was that it was barred by the provisions of the policy. NORVAL, J., speaking to the point, said: "The petition alleges and the proofs show that the loss occurred January 12, 1888. The suit was begun  *  *  *  eight months and a half after the cow was killed. If the condition of the policy above quoted stood alone, and was within the contemplation of the parties when the contract was entered into, then, doubtless, the failure of the plaintiff to commence his action within six months after the loss would operate as a bar to the action. But a contract of insurance, like all other contracts, must be construed so as to give effect, if possible, to all its provisions. This policy provides that written notice of the loss or damage must be immediately given and within thirty days the claimant must furnish proofs thereof. It is also stipulated that 'the amount of loss or damage, to be estimated according to the actual cash value of the property at the time of the loss and to be paid ninety days after notice and due and satisfactory proofs of the same shall have been made by the assured and received at the company's home office at Freeport, Illinois.' It will be observed that by the above condition of the policy the plaintiff in error did not become liable to pay the loss until ninety days after the making of the proofs of loss. The money was not due and the holder of the policy could not have lawfully demanded payment

until that time had elapsed. No suit, therefore, could have been commenced prior to the expiration of ninety days after the loss, and it is well settled that the period of limitation of six months did not begin to run from the date of loss, but from the time the suit could have been brought." The time fixed by the policy in suit in which an action thereon might be brought did not begin to run until the right of action of the administrator accrued, and that action did not accrue more than a year prior to the time this action was brought. The argument then of the insurance company that the action was barred by the terms of the policy when brought is untenable.

2. The policy in suit was based upon a written application made therefor by the assured. In this application he was asked and answered, among others, the following questions:

"Name and residence of your usual medical attendant? Dr. Morris.

"For what diseases have you required his advice or attendance? None.

"Have you consulted or obtained advice of any other medical man within the last ten years? No.

"Are you in good health? Yes.

"Give character, date, and duration of last illness, trivial or otherwise? Not for years.

"Have you at present, or have you ever had since childhood, any of the following disorders or diseases: Apoplexy, asthma, Bright's disease, bronchitis, cancer, chronic diarrhœa, colic (renal or hepatic), constipation (habitual), consumption, cough (protracted), delirium tremens, difficulty or increased frequency in urinating, diphtheria, disease of the heart, disease of genital or urinary organs, disease of liver, disease of lungs, disease of kidneys, disease of bladder, disease of stomach, bowels, discharge from ear, dropsy, dysentery, dyspepsia, enlarged glands, eruptions or any skin diseases, or fistula in ano, or fits or convulsions, gout, gravel, headache (severe or frequent), impaired sight, hearing, insanity, jaundice, neu-

ralgia, palpitation, paralysis, piles, pleurisy, pneumonia, rheumatism (state whether articular, or muscular, acute or chronic), shortness of breath, small-pox, sore throat (persistent), or spinal disease, spitting or coughing of blood, swelling of hands, feet, or eyelids, syphilis, tumors of any kind, ulcers, open sores, or vertigo? No."

"Have you had any diseases other than those above named, or malformation or injury? No."

The application also contained the following: "I do hereby declare    *    *    *    that I am now in good health and do ordinarily enjoy good health, and that in the above application I have not withheld any circumstances or information touching the past or present state of my health or habits of life with which the Pythian Life Association ought to be made acquainted.    *    *    *    And I do hereby declare and agree that each and every statement and answer contained in this application is material to the risk, and I hereby warrant all the answers and statements and each and every one of them contained herein    *    *    *    to be full, complete, and true, and it is agreed that this warranty shall form the basis and shall be a part of the contract between me and said association.    *    *    *    I do further agree that if any of the answers or statements made and contained herein are not full and complete, or that if the same or any of them, whether made in good faith or otherwise, are in any respect untrue, then said policy and this contract shall be null and void.    *    *    *    If any statement made in the application for this policy of insurance is in any respect untrue, then and in each and every such case the consideration of this contract shall be deemed to have failed and this policy of insurance shall be null and void."

The application was made a part of the policy, and the latter recited that it was issued in consideration of the application, which was made a part of the contract, and of the statements made therein, which statements every person accepting or acquiring an interest in the policy adopted as his own and warranted to be full, complete,

and true. It is now insisted in support of the judgment that each and every of the statements and answers quoted above made by the assured in his application for the policy in suit were and are warranties; that some of said statements or answers were untrue, and that therefore the policy has never been in force.

Were the statements and answers quoted above made by the assured warranties or representations? In *Ætna Ins. Co. v. Simmons*, 49 Neb., 811, we had occasion, this term, to consider the question whether the answers made by the insured in an application for insurance were warranties or representations. We there examined the question and reviewed the authorities at some length and reached the conclusion that the weight of modern authority establishes the following rules: That the statements contained in an application for a policy of insurance will not be construed as warranties which, if untrue in any particular, would avoid the policy, unless the provisions of the application and policy, taken together, leave no room for any other construction. And in construing a contract for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations the court will take into consideration the situation of the parties, the subject-matter of the contract, and the language employed, and will construe a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements. Applying the rule announced in that case to the question here, we cannot say that it clearly appears from the contract in suit that it was the intention of the contracting parties that every statement and answer quoted above made by the assured in his application should be a warranty as that term is understood in insurance law; that every statement and answer made should be literally true, or that the policy should be void. If the answers and state-

ments made in this application were warranties, then no matter how immaterial any statement or answer was, nor how little the fact varied from the statement or answer made, the policy was never in force.  When we read this entire application and policy together; when we consider the subject-matter of the contract and the language employed, the parties sometimes using the word "statements" and sometimes the word "warranties," we cannot say that the mind of the contracting parties met and consciously consented that the validity of the policy in this contract should depend upon the literal truth of every answer and statement made in the application.  In this application the assured was asked if he had then or had ever had since childhood any of fifty-seven named diseases. What sane man would consciously warrant that ever since his childhood he had not had any disease of the heart, liver, lungs, kidneys, bladder, stomach, or bowels?  No sane man would consciously consent that on the literal truth of his negative answer to such a question should depend the validity of a life insurance policy.  It might require a post-mortem examination to enable medical experts to determine whether any of such organs of the assured had since his childhood been diseased, and yet if these answers were warranties and such an examination revealed a diseased organ, the policy would be void. The language of the lamented Justice Miller in *Piedmont & Arlington Life Ins. Co. v. Ewing*, 92 U. S., 377, is applicable here: "How can a man who has lived forty or fifty years prove that he never had dyspepsia or a diarrhœa or any disease of the heart or bowels?  And how can he prove that his habits of life have always been correct and that he never drank ardent spirits to the extent of intemperance?  While it may be easy enough to prove the affirmative of one of these questions it is next to impossible to prove the negative.  The number of the questions now asked of the insured in every application for a policy, and the variety of subjects, and length of time which they cover are such that it may be safely said that

58

no sane man would ever take a policy if proof to the satisfaction of a jury of the truth of every answer were made known to him to be an indispensable prerequisite to payment of the sum secured, that proof to be made only after he was dead, and could render no assistance in furnishing it." In this case, if we are to consider each of these statements and answers of the assured to be warranties, in order to do so we are compelled to adopt one of two assumptions: We must either presume that the insured was insane or a man of such colossal ignorance as to render his contracts voidable, or that the insurance company, aware of the technical legal meaning of the term "warranty,"— and the assured being ignorant thereof,—purposely used it so that in case the assured died before the premiums he paid equalled the amount of the risk they might use that term to defeat his representatives. We do not think it fair or just either to the insurance company or to the insured to indulge either of these presumptions, but prefer to rest our decision on the proposition that the conduct and language of the contracting parties lead us to the conclusion that the mind of the assured never consciously intended and consented that the answers he made to the questions propounded to him should be deemed and taken to be warranties as that term is understood in insurance law; and we accordingly hold that the statements and the answers made by the insured in his application for the policy in this suit were not warranties, but representations. (See *Ætna Life Ins. Co. v. Simmons, supra,* and cases there cited.) And that in order for such representations to constitute a defense to this action it is incumbent upon the insurance company to plead and prove that the statements and answers were made as written in the application; that they were false; that they were false in some particular material to the insurance risk; that they were made intentionally by the insured; and that the insurance company relied and acted upon such statements;—and these are questions of fact and not questions of law. The court erred in taking the case

from the jury, and its judgment is reversed and the cause remanded.

REVERSED AND REMANDED.