ROYAL NEIGHBORS OF AMERICA V. FRANCIS H. WALLACE.

FILED MARCH 23, 1905.    No. 13,485.

1. **Life Insurance: APPLICATION.** An incorrect or untrue answer in an application for life insurance in reference to matters of opinion or judgment will not avoid the policy if made in good faith and without intention to deceive.

2. **Untrue Answers.** An untrue answer in an application for life insurance in regard to matters which are shown to be within the knowledge of the applicant and are material to the risk will avoid the policy.

3. ———: PRESUMPTION. If an applicant has knowledge of facts that furnish sufficient reason to believe that he is afflicted with a fatal disease when he makes his application, his statement in such application that he is in good health and free from disease will be presumed to be fraudulent.

ERROR to the district court for Dodge county: CONRAD

HOLLENBECK, JUDGE.    *Judgment of affirmance vacated. Judgment of district court reversed.*

J. G. Johnson, McNish & Graham, B. D. Smith, E. A. Enright and Talbot & Allen, for plaintiff in error.

F. Dolezal and Cook & Cook, contra.

SEDGWICK, J.

When this case was first considered by this court upon the former appeal, the questions and answers in the application for insurance upon which the decision now turns were set out in the opinion, 64 Neb. 330, and it was said that the answer of the company charged that the answers of the assured to the aforesaid questions "were knowingly and wilfully false, that they were material to the risk and were relied upon by the defendant." The trial court had held that these answers were representations and not warranties, and in discussing that question the opinion referred to goes on to say:

"It is fair to presume that the association dealt with the assured in good faith, and that its acceptance of her premium, receiving her into the order and issuance to her of the certificate in question, was more than an idle ceremony, and that it intended thereby to bind itself by a valid contract of insurance. There are upwards of a hundred questions in the application and medical examination. Many of them are of such a character, that no person, however honest his intentions, could answer them with any degree of assurance that each of his answers was literally true. To hold that such questions and answers amount to warranties would be to impute bad faith to the association in pretending to enter into a contract of insurance with the assured which could become binding upon it by the merest chance."

It was decided that they were representations and not warranties, and this has become the law of the case. This

was the question being discussed, and also whether these representations were material to the risk, and whether the jury should have been so instructed, and it was therefore not necessary to distinguish between the representations. This court has consistently maintained a line of distinction between questions in such applications which call for an expression of opinion, or for the statement of conclusions or facts which are not especially within the knowledge of the applicant for insurance, in regard to which the insurance company has equal means of ascertaining for itself the truth, and on the other hand questions which call for information in regard to facts which are and must necessarily be peculiarly within the knowledge of the applicant. Some of the questions set out in the opinion referred to are of the class which may be said to call for the opinion or judgment of the applicant. "Are you of sound mind and body, in good health, and free from disease?" It is clearly pointed out in the opinion referred to that such questions as these call for information in regard to which it is frequently impossible that any one should have exact knowledge, and it cannot be presumed that, where the applicant appeared to be in good health and free from disease, the company in asking this question expected to rely upon the applicant's judgment in that regard. On the other hand, if it should appear that the applicant at the time knew himself to be afflicted with some disease which afterwards resulted in death, or if the applicant knew of facts which furnished sufficient reason to believe that he was or might at that time be afflicted with such disease, then the answer of "Yes" to such a question would be false and would avoid the policy. The same may be said of all the other questions there quoted, unless it be the question, "Have you ever had any hemorrhages?" If the applicant before answering "No" to this question had a hemorrhage of blood from the lungs in such quantity as to leave no doubt upon a fair mind that it was actually a hemorrhage from the lungs, to answer "No" to this question would be a false answer and would avoid the policy. It is the

consideration of this last question and answer and the condition of the record with reference thereto which have made our investigation of this case difficult. The record discloses that several witnesses upon the trial of the case testified that they were well acquainted with the deceased; that they saw her frequently during her lifetime and especially during the last six or seven years of her life, and that on one occasion at least (and some of them testified to more than one occasion) they had seen the deceased when she was very ill, and at such times the deceased had declared to them that she had suffered a severe hemorrhage. There was no evidence of any witness who had sufficient knowledge from observation to testify that the deceased had ever had hemorrhages, and there were several witnesses who were very familiar with the deceased and with her condition (among them are her husband, her brother, and a sister), who testified positively that they had never known or heard of her ever having had a hemorrhage, so that the evidence may be said to be squarely in conflict upon this point. There is some evidence in the record that, if the deceased declared to the witnesses above referred to that she had suffered a hemorrhage, she referred not to hemorrhages from the lungs, but one that was natural and normal, except that it had been more severe than usual. The whole record shows that the question that was then being tried was whether she had suffered a severe hemorrhage of the lungs, and there was no doubt that the jury so understood it. When the court in its instructions referred to the inquiry whether the deceased had suffered a hemorrhage, the jury must have understood that reference was made to a hemorrhage of the lungs of such character that it could not or ought not to have been mistaken by the deceased. If the deceased had suffered such a hemorrhage as the defendant insisted she had, and as the evidence of the defendant tended to show, there would be no reason to suppose that she was not aware of the fact, or to find that she had acted in good faith when she denied having had such hemorrhage. These conditions and distinctions

should have been made plain to the jury in the instructions. It should have been made plain to them that, if the deceased had suffered a hemorrhage of the lungs of such severity as to leave no reasonable doubt of its nature and character, as it was claimed she had suffered, the plaintiff could not recover in this action. If it could be found from the evidence that she had suffered a slight hemorrhage from the throat or teeth, or one in the course of nature, but unusually severe, the question would be as to the good faith of the applicant in her answers. The instruction given by the court upon this question upon the first trial is quoted in the opinion upon the former appeal. 66 Neb. 543. It was there held to be erroneous to submit to the jury the question whether this question and answer related to matters material to the risk, and that feature of the instruction was eliminated upon the second trial. The instruction given was as follows:

"You are instructed that the fifth point for your determination arises from the following question and answer in said application, to wit: 'Have you ever had hemorrhages?' Ans. 'No.' If you believe from the evidence that this representation * * * was willfully and knowingly false, and intended by the assured to deceive the defendant, * * * then the plaintiff cannot recover, and you should find for the defendant; but, if you believe from the evidence that said representation * * * was not intentionally made to deceive the defendant, * * * then you should find for the plaintiff on this point."

As before pointed out, if she had suffered such a hemorrhage as the defendant claimed that she had, her answer to this question was of course false, and must have been knowingly and willfully made.

The defendant requested the following instruction:

"The fact is undisputed that, in the application for the benefit certificate herein sued on, Ada Wallace was asked the question, 'Have you ever had spitting of blood or other hemorrhages,' and that her answer thereto was 'No.' You are instructed that the matter inquired about in said ques-

tion was material to the risk. If you find from the evidence that at any time prior to the date of said application, to wit, July 2, 1897, said Ada Wallace had had spitting of blood or other hemorrhages, said answer to said question would work a forfeiture of the certificate herein sued on, and your verdict should be for defendant."

This was refused, and exception duly taken. The vital question presented in these instructions in view of the evidence and whole manner of the trial was whether the deceased, before making her application, had suffered a hemorrhage of the lungs such as claimed by defendant. If she had, she must have been aware of the fact. It was a matter of the highest importance in determining whether she was then suffering with the disease which afterwards caused her death, and her answer could not have been in good faith. Was this question fairly submitted to the jury? With some hesitancy we have concluded that it was not. If the instruction given by the court could be justified by the condition of the evidence, and the manner of contesting this point before the jury, still a more specific instruction would have been proper, and the same reasoning that would justify the one given would also justify giving the one requested by defendant.

The judgment heretofore rendered is vacated, and the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.