WILLIAM ROSS, APPELLEE, V. FIRST AMERICAN INSURANCE COMPANY, APPELLANT.

FILED SEPTEMBER 29, 1933. No. 28775.

*Albert S. Johnston,* for appellant.

*Beeler, Crosby & Baskins, contra.*

Heard before GOSS, C. J., GOOD, DAY and PAINE, JJ., and CHASE and LOVEL S. HASTINGS, District Judges.

HASTINGS, District Judge.

This action was brought by William Ross, plaintiff and appellee, against the First American Insurance Company, defendant and appellant, to recover indemnity upon an accident and health insurance policy issued by the defendant. On a trial to a jury a verdict was returned in favor of the plaintiff in the sum of $879.16; judgment was entered on the verdict, and defendant appeals.

It is admitted in the pleadings that on the 23d day of May, 1931, the defendant for a premium of $260 executed and delivered to plaintiff the five year term accident and health policy sued upon. It appears from the evidence that the plaintiff in payment of the premium executed and delivered to the defendant his note for $260, dated May 20, 1931, due in six months after date, with interest at 6 per cent. per annum.

It is alleged in the petition that on June 12, 1931, while said policy was in effect, plaintiff suffered an injury by stepping upon and piercing his left heel with a rusty nail; that plaintiff suffered a total disability therefrom which was continuous up to the time of the filing of his

petition on April 28, 1932, and that from July 3, 1931, he was confined in a hospital for the treatment of the disability arising from said injury for a period of ten months.

The defendant in its answer denied all the allegations of plaintiff's petition except the issuance and delivery of the policy and the giving of the premium note. Several affirmative defenses are pleaded in the answer, which are: (1) Failure to pay or offer to pay or to confess judgment for the premium note; (2) false statements in the application which were material to the risk and hazard assumed and contributed to the loss; (3) that the disability existed at the time the policy was issued and was due in part, at least, to bodily infirmity, and not covered by the policy; (4) and that defendant, after notice of its election to rescind, had rescinded the contract of insurance for fraudulent misstatements contained in the application and had returned the premium note to plaintiff.

The reply was a general denial of the affirmative defenses alleged in defendant's answer and a plea in avoidance of the alleged breach for failure to pay the premium note.

Under the issues so framed, defendant, before trial and at the close of the evidence, moved the court for a trial of the action in equity on the sole ground that the answer by the defendant prayed for the cancelation of the policy. Both motions were overruled and the rulings are assigned as error.

The cause of action presented by the petition of the plaintiff is purely a law action and before such action is triable in equity the equitable nature of the defense must clearly appear from the facts alleged in the answer, to defeat the plaintiff of his right to a trial to a jury. The facts alleged in the answer as a defense to plaintiff's cause of action do not present a defense cognizable solely in equity. The mere fact that the plaintiff did not, on demand, surrender the policy, after a loss thereon, for

cancelation did not change the action from one at law to one in equity.

The alleged defense that the policy was procured by the plaintiff by false statements made in the application, in the suppression or concealment of facts, was as available and complete as a defense to an action at law as it would have been in equity. A determination of the issues in favor of the defendant would have been an adjudication of the rights of the plaintiff under the policy and would have operated as effectively to bar any future recovery thereon as a cancelation by decree of the court in an action in equity. The issues having been determined in favor of the plaintiff, the right of the defendant to a rescission and cancelation of the policy was thereby determined against it and there was nothing left for a court of equity to act upon. The motions were properly overruled.

It is contended by counsel for the defendant that plaintiff, being in default for nonpayment of the premium note, could not maintain an action on the policy in the absence of an offer to pay or confess judgment thereon. The policy contains no provision for forfeiture for failure to pay a premium when due. It contains a provision, however, that the company at its option may suspend the policy during the period the premium is due and unpaid. The defendant never exercised that option, nor did it make any demand for payment.

The policy also contains the provision: "Upon the payment of any claim hereunder, any premium then due and unpaid or covered by any written order, or note or check may be deducted therefrom." The note became due on November 20, 1931, and previous to that date plaintiff had sustained a loss, which, if it entitled him to indemnity, was greatly in excess of the amount due on the note. The defendant did not deny liability for the loss until more than a month after the note matured. Before the maturity of the note plaintiff wrote defendant and asked it to give the amount that was due on his

note and whether it wished it paid by draft or by deducting the amount due from the indemnity due him under his policy. Thereafter, and before the company denied liability, plaintiff again wrote the company asking for settlement of his claim and authorized the company to deduct therefrom the amount due upon the note. The company did not reply to the first letter. It replied to the second letter and told him that it would have a representative out to see him in reference to his claim. On December 23, 1931, the company finally denied liability, gave notice of its election to rescind, and returned the note to the plaintiff. After it gave notice of rescission, it is evident that any offer or tender of payment by the plaintiff would not have been accepted. Thereafter plaintiff was not required to offer or tender payment of the note prior to the commencement of the suit. *Bundy v. Wills,* 88 Neb. 554; *Filley v. Walker,* 28 Neb. 506; 26 R. C. L. 624, sec. 3.

In his petition plaintiff alleged that defendant was entitled to credit for the amount due and owing on the premium note upon the indemnity alleged to be due plaintiff, gave the defendant credit therefor, and asked judgment for the remainder. This amounted to an offer of payment in accord with the provisions of the policy, if plaintiff recovered. If plaintiff did not recover, then defendant, having rescinded, would not be entitled to recover on the note.

Another ground of the motion for a directed verdict, which was overruled, was the alleged failure of plaintiff to give notice of his injury and disability as required by the contract of insurance. The policy contained the following provision:

"Written notice of injury or of sickness on which claim may be based must be given to the home office of the company within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness. * * * Failure to give notice within the time provided in this

policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

Compliance with this provision as to notice of claim for accidental injury or disability, unless waived, is a condition precedent to recovery. *Campbell v. Columbia Casualty Co.*, 125 Neb. 1. Defendant relies on the above case to support his contention. In that case the trial court directed a verdict for the defendant on the ground that no notice had been given as required, no excuse offered for delay, or waiver shown. The facts in that case are materially different. In this case the evidence shows that on June 12, 1931, when plaintiff sustained his injury, a physician was called, treated the wound and called on him some four days thereafter and found the wound about healed and nothing to indicate that any serious consequences would result. Some days later, on another visit, the physician discovered the leg somewhat swollen, indicating an infection that was progressing upward, and he continued to treat plaintiff for a few days thereafter at his place of business; then, being fearful that the swelling might extend above the knee, told him he should go to the hospital. Plaintiff on the same day, July 3, 1931, was taken to the hospital. Prior to the time he was taken to the hospital the physician had not indicated to plaintiff that he might suffer any serious disability therefrom. When taken to the hospital, plaintiff, for the first time, was advised that he was suffering from a serious disability on which a claim for indemnity might be based. Within a day or two after he was taken to the hospital, Rankin, the general soliciting agent of defendant, who had taken his application, called at the hospital, and plaintiff told him to notify the company of his injury and sickness. The agent told him he was going to the home office within a day or two and would notify the company. Not hearing from the defendant, plaintiff then requested his physician to write the com-

pany informing it of his injury and the disability resulting therefrom. On July 13, 1931, the physician wrote the defendant advising it of the injury and that he believed that it had already been reported to them by their agent, C. E. Rankin. On July 14, 1931, the company wrote the plaintiff acknowledging receipt of the letter from his physician, stating that it was inclosing a preliminary blank to be filled out and returned to its office. The plaintiff, on receipt of the blank from the company, filled it out and transmitted it to the defendant. Previous to the time plaintiff was taken to the hospital he did not realize that the injury sustained or the disability resulting therefrom was of such a serious nature as to warrant him in making a claim thereon for indemnity. When he did realize the serious nature of his disability, he caused written notice thereof to be given to the defendant. It further appears that there was nothing in his condition or the result of the injury to give reasonable warning to plaintiff that his injury would have any serious aspect.

When an injury received by an insured is apparently trivial in its nature, but which thereafter causes total disability, he is not required to give notice thereof until such facts have developed as would warn a person of ordinary and reasonable prudence that a disability might arise therefrom which would entitle him to indemnity under his contract of insurance. Notice of sickness, resulting from an injury, given by the insured within ten days after a person of ordinary and reasonable prudence realizes that such sickness had caused a disability that might entitle him to indemnity under his policy is sufficient to meet the requirements of the contract of insurance. *Chapin v. Ocean Accident & Guarantee Corporation*, 96 Neb. 213; *George v. Aetna Casualty & Surety Co.*, 121 Neb. 647; *Jennings v. Brotherhood Accident Co.*, 44 Colo. 68, 18 L. R. A. n. s. 109; *Grant v. North American Casualty Co.*, 88 Minn. 397; *Odd Fellows Fraternal*

*Accident Ass'n v. Earl,* 70 Fed. 16; *Rorick v. Railway Officials & Employees Accident Ass'n,* 119 Fed. 63.

Furthermore, it appears from the evidence defendant wrote plaintiff before this action was begun, in substance, denying liability upon the contract of insurance, assigning as the sole grounds therefor that plaintiff had made false statements in his application and that had the statements been truthfully made the policy would never have been issued; that on account thereof the defendant elected to rescind its approval of his application and the contract of insurance and return the note given for the premium (which was inclosed in the letter) and asked plaintiff to return the policy for cancelation. This letter was offered and received in evidence without objection.

The defendant, prior to the commencement of this action, having denied liability and given as its reason the alleged fraudulent procurement of the policy and that on such grounds it elected to rescind, cannot, after litigation has been begun, change its ground and assert as a defense the failure to give notice of loss within the required time. *Hamblin v. Equitable Life Assurance Society,* 124 Neb. 841; *Yates v. New England Mutual Life Ins. Co.,* 117 Neb. 265.

Refusal of payment upon the grounds indicated in the letter and its alleged rescission upon such grounds constitute a waiver of notice. *Feis v. United States Ins. Co.,* 112 Neb. 777. The defendant insists that plaintiff, not having specially pleaded an estoppel or waiver by defendant as to the giving of notice of loss, cannot avail himself thereof. Ordinarily an estoppel or waiver must be pleaded by the party invoking it; but where, as in this case, the facts showing an estoppel or waiver are within the issues made by the pleadings and the evidence showing the estoppel is admissible for any purpose thereunder, it is not necessary that the estoppel or waiver should be specially pleaded. *Yates v. New England Mutual Life Ins. Co., supra; Hirsch R. M. Co. v. Mil-*

*waukee & F. R. V. R. Co.,* 165 Wis. 220; *McDonnell v. De Soto Savings & Bldg. Ass'n,* 175 Mo. 250; 10 R. C. L. 844, sec. 149.

Error was not committed in overruling the motion for an instructed verdict on the ground assigned. In this connection plaintiff assigns error in the giving of instruction No. 3, wherein the jury were told that the burden of proof was upon the plaintiff to prove notice of loss or waiver thereof by the acts of the defendant. It follows from what has been said that the giving of that instruction was not prejudicial to defendant.

It is insisted by counsel for the defendant that the evidence establishes that plaintiff was afflicted with a bodily infirmity at the time that he made his application and at the time that the policy was issued, which materially contributed to or caused, either directly or indirectly, the disability for which plaintiff seeks to recover indemnity. In this respect the policy provides:

"Nor shall this policy cover any loss or disability caused directly or indirectly, wholly or in part, by mental or bodily infirmity."

It is established by the evidence that when plaintiff was taken to the hospital on July 3, 1931, he was suffering from a serious disease known as thrombophlebitis, which was affecting his left leg below the knee. A short time prior to May 1, 1931, plaintiff had a swelling in the calf of his right leg. To reduce the swelling he applied some strong liniment to that part of his leg. The liniment produced an irritation, and on May 1, 1931, he went to the office of Dr. Heider at North Platte, exhibited the swelling in his leg, was given a prescription for medicine to apply thereto to alleviate the irritation produced by the liniment and was told by the doctor to stay off his feet and keep his right leg elevated until the swelling went out. The doctor prescribed no other treatment and did not tell plaintiff the cause of the swell-

ing. The plaintiff paid the doctor for his treatment and did not thereafter consult him or any other physician in regard to said ailment. There was no perceptible swelling in plaintiff's right leg at the time that he made his application for insurance.

It is the claim of the defendant that plaintiff was afflicted with thrombophlebitis in his right leg at the time he consulted Dr. Heider and that such disease was present at the time he made his application and received the injury to his foot. The evidence upon this question is in conflict. The evidence in behalf of the plaintiff is that the ailment which caused the swelling in his leg, for which he consulted Dr. Heider, was not thrombophlebitis or a disease, but a condition produced by a sluggish circulation relieved by staying off his feet for a while; that the thrombophlebitis which plaintiff was suffering from at the time he was in the hospital was due directly to an infection introduced into the blood stream by the nail penetrating his foot. When plaintiff was taken to the hospital he was examined by the physician and there was no swelling in his right leg, but after he had been confined in the hospital for a short time the swelling progressed upward in his left leg to the pelvis and across and down into the right leg. Dr. Heider, called as a witness for the defendant, on his cross-examination testified that at the time plaintiff came to him for treatment of his right leg he did not diagnose his ailment as thrombophlebitis but as a temporary ailment. Dr. Heider, while testifying for the defendant in answer to a hypothetical question, stated that from the fact that plaintiff was afflicted with thrombophlebitis at the time he was taken to the hospital it was his opinion that probably plaintiff was afflicted therewith in his right leg at the time he consulted him and at the time he made his application and probably had not recovered therefrom at the time of his injury.

"Bodily infirmity means a settled disease, an ailment that would probably result to some degree in the general impairment of physical health and vigor. * * * Bodily infirmity, as used in an accident policy exempting the insurer from liability, only includes an ailment * * * of a somewhat established or settled character, and not merely a temporary disorder arising from a sudden and unexpected derangement of the system." *French v. Fidelity & Casualty Co.*, 135 Wis. 259. See, also, *Eastern District Piece Dye Works v. Travelers Ins. Co.*, 234 N. Y. 441, 26 A. L. R. 1505, and note.

The evidence in this respect sustains the verdict of the jury.

It is contended by counsel for defendant that the evidence establishes that plaintiff made false representations in his application, material to the risk, thereby deceiving defendant to its injury, and that the trial court should have sustained defendant's motion for a directed verdict. The particular questions claimed to have been falsely answered together with the answers given in the application were the following: "8. Who is your physician? None. Date of last treatment? None. * * * 9. Are you now in good health? Yes. * * * 11. Have you had any other disease in the past five years? No." It appears that plaintiff's application was taken by Pierson and Rankin, soliciting agents of defendant; that Rankin wrote the answers to the questions therein and plaintiff had nothing to do with the preparation thereof. The evidence further shows, without conflict, that plaintiff told said agents at that time that he had previously had a swelling in his right leg, had been treating it with the use of liniment and staying off his feet, that he thought it was all right then. He exhibited his leg to them and both of said agents testify that it was not swollen and appeared to be normal. Rankin told plaintiff that it was not necessary to mention it in the application; that his father had been troubled with the same thing at times when he was plowing corn with a walking cultivator,

but that as soon as that work was over and he got off his feet the swelling disappeared. The evidence shows that plaintiff was in good health at that time except as the ailment to his right leg might affect the same. Other than that ailment there is no evidence that within the preceding five years he had been afflicted with any other disease or ailment material to the risk. Plaintiff made a full disclosure to said agents about his ailment and the treatment thereof, save and except that he had consulted Dr. Heider in relation thereto and had been told to keep off his feet and elevate his foot until the swelling went out, and that he had been given a prescription for medicine to stop the burning and itching caused by the liniment. The knowledge of defendant's agents obtained at that time in regard to the ailment with which plaintiff had been afflicted is imputed to the defendant, there being no collusion shown between such agents and the plaintiff to deceive defendant. *Rubinson v. North American Accident Ins. Co.*, 124 Neb. 269; *Home Fire Ins. Co. v. Fallon*, 45 Neb. 554; *German Ins. Co. v. Frederick*, 57 Neb. 538; *Busboom v. Capital Fire Ins. Co.*, 111 Neb. 855; *Johnson v. Aetna Ins. Co.*, 123 Ga. 404; *Norem v. Iowa Implement Mutual Ins. Ass'n*, 196 Ia. 983; *Nertney v. National Fire Ins. Co.*, 199 Ia. 1358; 21 R. C. L. 838, sec. 21.

It will be presumed that defendant's agents imparted the information thus obtained to their principal. It is insisted by counsel for the defendant that the knowledge thus obtained by defendant's agents could not be imputed to the defendant. We are cited to the case of *Morrissey v. Travelers Protective Ass'n*, 122 Neb. 329, in support thereof. The facts stated in the opinion in that case do not make the rule announced therein applicable to the facts in the instant case, nor is it in conflict with the authorities cited. The knowledge of defendant's agents being imputed to defendant, it could not have been deceived by nor relied upon the answers to questions 9 and 11 to its injury.

Representations contained in an application for insurance that the insured is in good health and has had no disease within the preceding five years means that the insured has not suffered any illness or disease of a serious nature tending to undermine the constitution or seriously affecting the general soundness or health of his system. The mere failure or omission to state the name of a physician and a treatment by him for some temporary indisposition or ailment will not avoid the policy. *Yonda v. Royal Neighbors of America,* 96 Neb. 730; *Modern Woodmen of America v. Wilson,* 76 Neb. 344; *Blumenthal v. Berkshire Life Ins. Co.,* 134 Mich. 216; *French v. Fidelity & Casualty Co.,* 135 Wis. 259. If the ailment to plaintiff's right leg was a temporary ailment or indisposition which readily responded to treatment and he having told defendant's agents all he knew in relation to the nature of said ailment, and on examination by them of his leg it appeared normal, then his answers to both parts of question 8 would be immaterial and defendant would not be deceived thereby to its injury. Under the facts and circumstances disclosed by the record, it was not error to overrule defendant's motion for a directed verdict on the grounds assigned.

Error is assigned in the giving of instruction No. 6. It is the contention of defendant that the trial court erred in instructing the jury that the answers to questions 9 and 11 did not avoid the policy if plaintiff did not intend to deceive the defendant thereby. The instruction is too long to quote and it is not necessary to a proper consideration of the question involved. The trial court, in substance, told the jury in that instruction that the answers to questions 9 and 11 would not avoid the policy if plaintiff acted in good faith and with no intent to deceive, and disclosed to Mr. Rankin all he knew about his health, and all he knew of having any disease within the five years preceding May 20, 1931; but if plaintiff did not disclose all he knew relative to his health, and knew of his having had some disease within the five years

that materially affected the risk assumed by defendant, and either failed to tell said Rankin thereof or allowed him to send such answers to the defendant with the intent to deceive the defendant, that the policy would be avoided thereby. As heretofore pointed out, the evidence, without conflict, discloses that plaintiff told defendant's agents all he knew about any ailment or disease that might materially affect the risk. The court should have instructed the jury that, in view of the disclosures made to defendant's agents, the answers to said questions would not avoid the policy, therefore the submission of such issues was without prejudice to the defendant.

The policy provides: "That no indemnities shall be paid for 'such illness' if same is contracted and begins within fourteen days from date of issue of this policy." It is insisted that the verdict is not supported by the evidence and that the illness and disability for which plaintiff claims indemnity commenced within fourteen days from the issuance of the policy. As to whether the ailment which caused plaintiff's disability was contracted and begun within fourteen days from the issuance of the policy is a question upon which the evidence is in conflict and is amply sufficient to support the verdict of the jury.

It is claimed that there was error in the giving of instructions 4 and 5, in that the court limited a bodily infirmity, which would avoid the policy, to one existing at the time of the issuance of the policy. The record discloses that the theory of the defendant was that the bodily infirmity which caused the disability on which plaintiff's claim for indemnity is based existed at the time of the issuance of the policy, therefore the claim of error in this regard is without merit.

It is also urged that the court erred in failing to correctly define "bodily infirmity" in instruction No. 5. The definition of that phrase in the instruction conforms to the meaning given by the authorities heretofore cited.

It is contended that the court erred in giving instruc-

tion No. 7, wherein the jury were permitted to find, as an element of plaintiff's recovery, that he might recover for hospital benefits provided for in the policy. The provision of the policy relating thereto is as follows:

"If on account of such bodily injury or such disease, it is necessary to remove the insured to a regularly incorporated hospital within thirty days of the date of such bodily injury, or such disease, the regular monthly indemnity payable shall be increased by one-half for a period not exceeding two months during such hospital confinement."

The hospital to which plaintiff was removed and received treatment was a small unincorporated hospital. It is contended that plaintiff was not entitled to recover benefits for treatment in such a hospital. The probable purpose of the provision limiting such benefits to treatment in an incorporated hospital is that generally such a hospital would be of a more permanent character, have better facilities for treatment, and thus shorten the period of disability, than one not incorporated. The provision was a reasonable one. The recovery for hospital benefits being limited to treatment received in a certain class of hospitals, there can be no recovery for treatment in any other class.

It appears that the jury included in their verdict hospital benefits for two months amounting to $100, with interest thereon from the date of the filing of the petition therein on April 28, 1932, to October 22, 1932, at 7 per cent. amounting in all to the sum of $103.97. The error may be cured by a remittitur of that sum from the amount of the judgment. If plaintiff file a remittitur in this court within 20 days for the sum of $103.97, the judgment for $775.19, with interest from October 22, 1932, will be affirmed, otherwise it will be reversed and cause remanded for a new trial. We have carefully examined the evidence and find that it is sufficient to support the verdict of the jury except as to the allowance for hospital benefits.

The trial court allowed plaintiff's attorneys a fee of $350 and defendant complains of this as excessive. The allowance of such fee was largely in the discretion of the trial court. When we take into consideration the length of the trial and the questions involved we do not think that the allowance made should be disturbed, although the amount involved is small.

AFFIRMED ON CONDITION.