ETTA CARPENTER, APPELLEE, V. SUN INDEMNITY COMPANY,
APPELLANT.

293 N. W. 400

FILED AUGUST 2, 1940.   No. 30826.

*Stewart, Stewart & Whitworth* and *Rosewater, Mecham, Shackelford & Stoehr*, for appellant.

*Brown, Fitch & West* and *John J. Wilson*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is an action at law upon a policy of accident insurance by Etta Carpenter, the beneficiary named therein. The amended petition sets forth the making and delivery of the policy of insurance by the defendant "on or about the 28th day of March, 1932," in which defendant agreed to pay plaintiff $10,000 in the event of the death of Harry Lyman Carpenter (the husband) "provided said death was caused solely and exclusively by bodily injury sustained solely through accidental means." A copy of the policy is attached to and forms a part of the petition. The occurrence of an accident is alleged to have taken place on July 22, 1937, and as a result of the injury then received, "and by reason thereof, the said Harry Lyman Carpenter died on or about the 16th day of April, 1938." The substantial compliance

with the terms and conditions of the policy is alleged, followed by the usual prayer for judgment.

The defendant's answer, in addition to a general denial, sets forth as a defense that the application for insurance signed by Harry Lyman Carpenter, in addition to numerous questions answered by him to the effect that he had no disqualifying illness or physical defects, contained the following questions and answers thereto made by said applicant, viz.: "28. 'Are you otherwise in sound physical condition?' To which the insured answered 'Yes.' 29. 'Have you within the past five years had medical or surgical advice or treatment or any departures from good health? If so state when and what and duration.' To which the insured answered 'None' in the first application, and answered 'No' in the second application. 30. 'Have you ever had or ever been advised to have an operation?' To which the insured answered 'No.' That said answers and each of them were untrue as the insured in the year 1910 had had a serious attack of osteomyelitis in the right leg, at and below the knee; that said disease was so severe that it required medical and surgical attention; that the insured was operated upon at said time and a large part of the bone removed; that said disease and operation left said leg in a weakened condition; that said disease became latent and rendered said leg extremely susceptible to injury and a recurrence of said disease, and that the insured at all times had to protect said leg with an extra covering, pad or bandage, and at intervals consulted a physician and surgeon with reference thereto. * * * That the answers so made by the insured in answer to said questions in each of said applications materially affected the acceptance of the risk and the risk to be assumed by the company; that the said policy was issued by reason of said statements and in reliance thereon and not otherwise; that the answers were untrue and were made by the insured, Harry Lyman Carpenter, with intent to deceive defendant; that defendant relied upon and believed the truthfulness of such answers and information and was deceived to its injury." Defendant further alleged that plaintiff's recovery

was negatived under the facts in the case by the policy provision excluding "loss caused or contributed to directly or indirectly by disease or infirmity" and also by the provision of the policy that, "C. Reimbursement will not be made for any disability or operation which is necessitated by a bodily condition contracted or existing prior to the issuance of this policy." Defendant also alleged, at length, that no written notice of injury was given as required by the terms of the policy; and also that the amount of the premiums received by defendant, to wit, $417.45, was tendered into court for the use of plaintiff.

To this answer plaintiff replied setting forth a general denial; that the application for insurance and the answers of the insured upon which defendant's defense is predicated are not a part of the contract sued upon; and further alleged that the injuries which were received on account of said accident of July 22, 1937, were apparently trivial in their nature, and remained in that condition until said insured was taken to the hospital on or about November 29, 1937, when he became incompetent to give notice, and his daughter thereafter in due time gave notice; and that defendant's agent, R. M. Kirk, who took the application from Harry Lyman Carpenter, on which the policy in suit was issued, had actual notice of said accident and the condition of said Harry Lyman Carpenter resulting therefrom.

On these issues there was a trial on the merits to a jury, who, after hearing the evidence, returned a verdict for plaintiff as prayed. The defendant's motion for a new trial was presented and overruled, from which order it presents this appeal.

The contractual provisions contained in the insurance policy here in suit, as well as the statements, representations and warranties contained in the application therefor, are to be construed to comply with the terms of, and in harmony with, the following statutory provision, viz.: "No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat

or avoid the policy or prevent its attaching unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding." Comp. St. 1929, sec. 44-322. See, *McCleneghan v. London Guarantee & Accident Co.,* 132 Neb. 131, 271 N. W. 276.

So far as the alleged false statements of the assured quoted in its answer are concerned, the defendant by its pleading interprets them as representations and not as warranties. This construction is accepted as the law of this case. *Aetna Life Ins. Co. v. Rehlaender,* 68 Neb. 284, 94 N. W. 129. The present proceeding is not a trial *de novo* but is in the nature of a proceeding in error. If, therefore, the record here presented discloses that the litigable issues involved were submitted to the jury by proper instructions, the verdict against the insurance company will not be set aside if there is competent evidence to sustain it. The burden of proof on questions of falseness and materiality of the "answers" contained in the alleged application for insurance upon which defendant relies is imposed upon the defendant in view of the form of the issues tendered by it.

The sole basis for defendant's contention as to the falsity of the answers quoted rests upon the claim that Mr. Carpenter suffered from an attack of osteomyelitis in 1910, which fact, it is in substance alleged, he, in effect, fraudulently concealed by his replies to the questions quoted in the application of March 28, 1932. However, while the assured was specifically inquired of in that application, as to whether he "had any of the following: Epilepsy, syphilis, vertigo or dizziness, diabetes, tuberculosis, mental disorder, disease of brain or nervous system, pyorrhea, disease of heart or blood vessels," etc., this application, which is on a form provided by the insurer, contains no direct reference to osteomyelitis, and there is no connection between the

questions answered by the assured and that particular disease, unless it is to be found in the alleged "operation" claimed to have been undergone by the assured in 1910. But we find no competent controlling evidence in the record that discloses with any degree of particularity what happened to Mr. Carpenter in 1910. Mrs. Carpenter testifies that in 1910 her husband was struck on the leg by a gate at the stockyards and he was taken to the hospital for treatment. Dr. Harry Everett was the attending physician. In due time Carpenter recovered and the injured leg was fully healed. He had been engaged in the live stock business at the public yards and this required him to make frequent trips by automobile through Nebraska, Colorado, Kansas, etc. Commencing immediately after he got over the accident of 1910, and continuing down to July 22, 1937, Mr. Carpenter enjoyed splendid health, resumed his active duties, and never laid off a day on account of sickness or for any other reason. He made no complaints of his leg (which had been injured in 1910) troubling him in any way.' He played golf, and during vacations indulged in mountain climbing, and appeared to be in all respects a hearty, rugged man.

Witness Dr. George H. Walker, a physician and surgeon of over twenty years' experience, and medical director of the Lincoln Liberty Life Insurance Company, testifies that he was a personal friend of Harry Lyman Carpenter, lived adjoining him, and had known him since about 1919 and 1920; that he made professional periodical check-ups or examinations of Mr. Carpenter for his health during the latter years of his life. These were the usual health examinations. In addition, in 1924 and in 1931 he examined Mr. Carpenter for life insurance. He examined the leg in 1924 and again in 1931, and found it to be in first class condition and free from infection. While he did not examine him between 1927 and 1931, nor after 1931 until in November, 1936, and April, 1937, Mr. Carpenter appeared to be in excellent physical condition at all examinations, and he at no time made any complaint about the leg which

was injured in 1910. As part of the cross-examination of Dr. Walker, defendant introduced in evidence a letter written by Dr. Walker, as medical director of the Lincoln Liberty Life Insurance Company, on July 15, 1931, in behalf of that company and directed to the North American Reassurance Company. The Lincoln Liberty Life Insurance Company was then seeking to secure reassurance on a policy of life insurance which it had issued upon the life of Mr. Carpenter. It will be remembered in this connection that Dr. Walker first met Carpenter, the deceased, in 1919, was not his attending physician in 1910, and, so far as disclosed by the record, this letter was written wholly without the knowledge of the deceased or in any way authorized by him. Paragraph two of the letter was offered by the defendant as part of the cross-examination of this witness, and over plaintiff's objection it was received by the district court. The plaintiff then immediately offered the letter as an entirety, and it was, in turn, received in evidence. The following constitutes quotations from this letter:

"We are submitting for your consideration papers on the life of Harry L. Carpenter.

"This man had an Osteomyelitis of the right tibia in 1910. His condition was serious at that time. The bone was opened and curetted, with good results. At times since then there has been a slight irritation of the skin, or rather the old scar over the bone. These have merely been a breaking down of the scar tissue.

"I have seen this leg off and on for over a period of ten years, and it does not change any. There is no discharge of any kind and the bone has apparently healed. This is substantiated by Dr. Harry Everett, who was and is now his attending physician and surgeon. I have seen Mr. Carpenter at various times for health examinations and the findings are about the same as shown on the medical examination presented, with the exception that the urine on the average shows only a few hyaline casts per field, slightly more than the ordinary man of 59 years.

"I feel that this man is entitled to insurance—although

possibly not standard, a slight rate up would be necessary on account of the kind of policy he is applying for."

It will be noted that this letter does not purport to be the statement of Harry Lyman Carpenter, or authorized by him. There is no evidence in the record that these statements were based upon things said by Mr. Carpenter. As to him and his representative, the plaintiff in this case, the statements in this letter are mere hearsay and of no binding force and effect. Offered by the defendant for the purpose of impeachment of witness Dr. Walker, the letter was properly received for what it was worth, but limited to the question of impeachment. The statements did not constitute primary evidence as against the plaintiff in this case for any purpose whatever, nor did they tend to establish, as against the assured, the conditions as to the injury to his leg as they existed in 1910.

We are not overlooking the medical history and hospital records which purport to have been taken and made on "11-29-1937," which appear in this record as exhibits 16 and 17. They were each received in evidence over due objections offered by the plaintiff. As was stated in *Maul v. Iowa-Nebraska Light & Power Co.*, 137 Neb. 128, 288 N. W. 532, with reference to an identical class of evidence: "It is to be noted that statements contained in exhibit 13 do not come to us under sanction of the customary oath." Strictly speaking, the results therein contained are hearsay, and, having been received over proper objections, cannot be held to establish the facts therein recited. In addition, the competency of the assured to make admissions, in view of all the evidence in the record, at the time the statements purport to have been made, is a matter of doubt.

There is no question in the evidence but what the accident of July 22, 1937, was the primary cause of the death of the assured. The continued course of more than twenty-two years of excellent health was in effect interrupted by this accident. The effects of this accident, gradually increased by developments thereof, with no intervening agency disclosed by the evidence, culminated in the death of the as-

sured on April 16, 1938, at which time the policy in suit was in full force and effect. On this point we do not overlook the contention of the defendant that if the assured, at the time the injury was received, was suffering from a disease or defect which, acting with the injury as a contributing factor, causes death, or when such disease or defect aggravates the effect of the injury, or the injury aggravates the effect of the disease, and both acting together cause death, the claimed injury and death are not within the terms of such policy. Conceding *arguendo* this contention, it must also be conceded that osteomyelitis is curable, and the existence of instances of that fact are admitted even by defendant's experts. It must also be admitted that we have no controlling competent evidence of what treatment was actually administered to assured's leg in 1910. Twenty-two years of excellent health with no untoward development at the seat of the injury suffered in 1910, together with other facts presented in the record, tend to establish as a fact that a cure of the conditions that obtained in the injured member had been effected in 1910. It will be remembered, however, that the insurance company's defense is not predicated necessarily upon the existence of osteomyelitis when the application was signed, but upon assured's alleged false answers to the questions propounded to him in the formal application for his insurance. However, it is quite obvious that twenty-two years of uninterrupted good health experienced by him, in connection with other facts established, justified the assured's statements made to numerous questions answered by him in 1932, to the effect that he then had no disqualifying illness or physical defects. This conclusion is confirmed by the continued good health of the assured down to July 22, 1937. This situation, if proved to the satisfaction of the trial jury, certainly establishes the good faith of assured in making the representations last above referred to. Even if, as to these facts, the assured should have been honestly mistaken when the application here presented was signed by him, still the controlling rule would be, "Untrue representation made by the assured in his application, where

the question eliciting such statement calls for matters of opinion, judgment, or belief, will not avoid a policy issued thereon, unless it is shown that the misrepresentation was knowingly made with intent to deceive." *Muhlbach v. Illinois Bankers Life Ass'n,* 108 Neb. 146, 187 N. W. 787. See, also, *Royal Neighbors of America v. Wallace,* 73 Neb. 409, 102 N. W. 1020.

As we have already seen, the evidence fails to disclose with any degree of particularity what happened to Mr. Carpenter in 1910, other than that Mrs. Carpenter testifies that he was struck on the leg by a gate at the stockyards, and that he was taken to the hospital for treatment. This treatment was the scraping of the bone, as she understood it, but she was not present at the hospital and did not see what was done, and therefore has no personal knowledge of what was done. When we take the testimony on this subject as an entirety, and in the light of all the other facts shown in the record by competent testimony, we have, at most, a question for the jury to determine as to whether the deceased was actually subjected to an "operation" in 1910, as that term "operation" is commonly understood; and ample evidence appears in the record to support a conclusion that the representations actually made on that subject were made under circumstances and conditions evidencing good faith and negativing knowledge of falsity or any intent to deceive on the part of the assured. See *Beile v. Travelers Protective Ass'n,* 155 Mo. App. 629, 135 S. W. 497; *Rogers v. Atlantic Life Ins. Co.,* 135 S. Car. 89, 133 S. E. 215; *Caruthers v. Kansas Mutual Life Ins. Co.,* 108 Fed. 487.

The rule applicable in the instant case, on the subject under discussion, is: "In order to defeat a recovery in such a case the company must prove that the representations are untrue, and were made by the assured knowingly with the fraudulent intent to mislead and deceive; that they were material to the risk, and were relied on by the defendant." *Aetna Life Ins. Co. v. Rehlaender,* 68 Neb. 284, 94 N. W. 129.

It appears from the entire record in this case that there is ample evidence, in view of the burden of proof as imposed upon the defendant by the form of the issues upon which the case was tried, to sustain the verdict returned by the jury and the judgment entered thereon.

A verdict against an insurance company on the issue of false representations will not be set aside if there is competent evidence to sustain it. *Aetna Life Ins. Co. v. Rehlaender, supra.*

The defendant challenges the refusal of the trial court to give the instruction requested by the defendant to the effect that, under the circumstances established by the record, the failure of the plaintiff to call Dr. Harry Everett as her witness was "to be considered by the jury and to be given such weight as the jury might see fit." The defendant cites in support of its request *Vergin v. City of Saginaw,* 125 Mich. 499, 84 N. W. 1075. In the *Vergin* case the Michigan court merely cites *Cooley v. Foltz,* 85 Mich. 47, as controlling authority without further discussion of the reason therefor. An examination of *Cooley v. Foltz, supra,* and the authorities therein cited discloses that this rule announced by the Michigan court arises in the application of the statute relating to privileged communications to physicians, etc. Our statute relating to this subject is, as an entirety, wholly different from the Michigan act, and makes the physician in the instant case a competent witness, and alike subject to the call of both plaintiff and defendant. The reason which underlies *Vergin v. City of Saginaw, supra,* has no application under the Nebraska statute, hence our courts have never announced the rule for which defendant contends. The action of the trial court in refusing to give the instruction requested is approved. See *Westing v. Chicago, B. & Q. R. Co.,* 87 Neb. 655, 127 N. W. 1076.

The further contention is made by the defendant that by his answer to the question, "Have you ever had or ever been advised to have *an operation?*" made more than twenty-two years after 1910, after he had been apparently completely cured, and after enjoying more than twenty-two years of

excellent health, assured made such a known and fraudulent representation as to avoid the policy.

In order for alleged misrepresentations in an application for insurance to constitute a defense to an action on the insurance contract evidenced by the policy in writing, it is incumbent upon the insurance company to plead and prove: (1) That the statements and answers were made as written in the application; (2) that they were false; (3) that they were false in some particular material to the insurance risk; (4) that they were made knowingly by the insured with the intent to deceive; (5) that the insurance company relied and acted upon such statements or representations, and was deceived by them to its injury; (6) that the false statements so relied upon constitute a part of the completed application indorsed upon or annexed to the insurance policy in suit as delivered to the assured. See *Kettenbach v. Omaha Life Ass'n,* 49 Neb. 842, 69 N. W. 135; *Aetna Life Ins. Co. v. Rehlaender,* 68 Neb. 284, 94 N. W. 129; *Royal Neighbors of America v. Wallace,* 73 Neb. 409, 102 N. W. 1020; *Bankers Union of the World v. Mixon,* 74 Neb. 36, 103 N. W. 1049; *Beeler v. Supreme Tribe of Ben Hur,* 106 Neb. 853, 184 N. W. 917; *Pollard v. Royal Highlanders,* 128 Neb. 790, 260 N. W. 399; *Muhlbach v. Illinois Bankers Life Ass'n,* 108 Neb. 146, 187 N. W. 787; *McClure v. World Ins. Co.,* 126 Neb. 676, 254 N. W. 393; *Scott v. New England Mutual Life Ins. Co.,* 128 Neb. 867, 260 N. W. 377.

We take it, in view of all the surrounding circumstances, that, without doubt, on July 22, 1937, Harry Lyman Carpenter met with an accident that bruised his right leg between the knee and ankle; that in the evening of the day of the accident the discoloration occasioned by the accidental bruise clearly appeared, and that the leg at the point of injury then presented no other involvement; that it was an ordinary bruise, painful but not immediately disabling in its effects; that it was not such an injury as would impose liability under the terms of the policy; that these characteristics continued for a time, and while sufficient to cause the application of home remedies, they brought no notice

of the seriousness thereof until osteomyelitis developed, which seems to have become evident to the assured shortly before November 29, 1937. Until that time the assured's failure to give notice thereof was clearly excused. Under the terms of defendant's insurance contract, the time within which a policyholder must give notice of an accident does not begin to run until such time as he has reason to believe that the injury received will constitute a claim under his certificate. *Kaneft v. Mutual Benefit Health & Accident Ass'n*, 102 Neb. 87, 166 N. W. 121; *Ross v. First American Ins. Co.*, 125 Neb. 329, 250 N. W. 75; *McCleneghan v. London Guarantee & Accident Co.*, 132 Neb. 131, 271 N. W. 276. On this factual basis, the notice stipulated for in the policy of insurance was timely served.

The defendant attacks the verdict for misconduct of the jury in their deliberations. It seeks to support its challenge by affidavits of the jurors as to what occurred in the jury room during their deliberations. This court has long been committed to the principles which have been summarized in *Schindler v. Mulhair*, 132 Neb. 809, 273 N. W. 217, as follows:

"No affidavit, deposition or other sworn statement of a juror will be received to impeach or explain a verdict or on what grounds it was rendered, or to show a mistake in it, or that the jurors misunderstood the charge of the court or that they mistook the law, or the result of the finding, on the ground that such matters inhere in the verdict.

"Affidavits or testimony of jurors will not be received for the purpose of impeaching or avoiding their verdict in respect to matters inhering in the verdict itself."

If we assume that the facts upon which the defendant relies to sustain this challenge are not covered by the rule above quoted, and are for consideration of this court, then the further principles, long established in this jurisdiction, would, under the facts as established by the preponderance of the evidence, control: (1) That the misconduct complained of influenced the jurors in arriving at a verdict. *Lambert v. State*, 91 Neb. 520, 136 N. W. 720; *Aten v. Quan-*

*tock,* 112 Neb. 288, 199 N. W. 551; *Harris v. State,* 24 Neb. 803, 40 N. W. 317; *Glick v. Poska,* 122 Neb. 102, 239 N. W. 626. (2) That the alleged misconduct related to a matter in dispute. *Harris v. State,* 24 Neb. 803, 40 N. W. 317; *Douglas v. Smith,* 75 Neb. 169, 106 N. W. 173; *Wessel v. Bishop,* 76 Neb. 74, 107 N. W. 220.

A careful reading of the affidavits attached to the bill of exceptions affirmatively discloses that the statements challenged in no manner affected the result, and were, in fact, in accord with the statements of defendant's witness. It follows that the action of the trial court in denying defendant's motion based on this ground was in all respects correct.

We have carefully considered the instructions given and refused by the trial court and find no substantial error therein; and further find the conduct of plaintiff's attorney in the argument of the case to the jury not properly subject to the criticism made.

The last matter submitted to this court is the reasonableness of the attorney fee allowed by the trial court. However, the transcript discloses that this matter was not called to the attention of the trial court by motion to retax costs or motion for a new trial. We are committed to the view that "Alleged error in allowance of attorney's fees in an action on an insurance policy will not be reviewed by this court unless such question has been first presented to the trial court for correction." *From v. General American Life Ins. Co.,* 132 Neb. 731, 273 N. W. 36. However, the court deems the allowance made by the trial court ample for services in both district and supreme court and therefore no additional allowance is made on appeal.

It follows that the judgment of the district court is correct in all respects and is, therefore,

AFFIRMED.